PITTS v. AMERICAN SECURITY INS. CO., et al., 2000 NCBC 1

| | | |
|---|---|---|
| STATE OF NORTH CAROLINA<br>PITT COUNTY | )<br>)<br>) | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION<br>96-CVS-658 |
| MARGARET WILLIAMS PITTS, Individually<br>and on behalf of all persons similarly situated, | )<br>)<br>) | |
| Plaintiff, | )<br>)<br>) | |
| v.<br>AMERICAN SECURITY INSURANCE<br>COMPANY, AMERICAN SECURITY<br>INSURANCE GROUP, STANDARD<br>GUARANTY INSURANCE COMPANY, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **ORDER AND OPINION** |
| and | )<br>) | |
| WACHOVIA BANK OF NORTH CAROLINA,<br>N.A., | )<br>)<br>) | |
| Defendants | ) | |

{1} **This matter** is before the Court on Plaintiff's motion to certify as a class action the claims for damages of certain individuals in North Carolina who entered into purchase money promissory notes with Defendant Wachovia Bank of North Carolina, N.A. (Wachovia) and on joint motion by American Security Insurance Group (ASIG) and Standard Guaranty Insurance Company (SGIC) (collectively the "American Security Defendants") for partial summary judgment. For reasons explained below, the American Security Defendants' motion for partial summary judgment is **GRANTED.** Plaintiff's motion for class certification is **DENIED**.

*The Blount Law Firm, P.L.L.C., by Marvin K. Blount, Jr. and James C. Gulick; Cohen, Milstein, Hausfeld & Toll, by Michael D. Hausfeld and Lisa Mezzetti; Murray & Murray Co., L.P.A., by Sylvia M. Antalis and John T. Murray for Plaintiff.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Carl N. Patterson and Donald H. Tucker for Defendants American Security Insurance Company, American Security Insurance Group and Standard Guaranty Insurance Company.*

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Reid C. Adams, Grady Barnhill and Hada V. Haulsee for Defendant Wachovia Bank of North Carolina, N.A.*

**I.**

{2} This claim arises out of a promissory note entered into between Plaintiff and Wachovia. The promissory note that is the subject of this litigation secured repayment of a loan granted by Wachovia to Plaintiff for the purchase of an automobile. The note requires the debtor to maintain collision and comprehensive insurance covering the automobile financed by Wachovia. If at any time the debtor fails to maintain such insurance, the note grants Wachovia the authority to "force-place" collateral protection insurance (CPI) on the automobile, thus insuring Wachovia's security interest in the collateral. The CPI

program employed by Wachovia was initially designed and underwritten by ASIG. Later revisions to the CPI program were underwritten by SGIC. The policy written by the American Security Defendants for Wachovia was approved by the Commissioner of Insurance.

{3} On three separate occasions, Ms. Pitts allowed her own collision and comprehensive insurance to lapse, which resulted in Wachovia force-placing CPI coverage. In each instance notices were sent to Ms. Pitts informing her that the CPI coverage was in place and that she had the option to replace the force-placed CPI with other insurance at any time. The first two CPI certificates were canceled within a few months of issuance when Ms. Pitts obtained her own private coverage. The third certificate remained in place until it expired, which occurred when Ms. Pitts was in bankruptcy. Ms. Pitts was found to be in default on her loan for failing to make the required payments. At the time of default, the balance on Ms. Pitts' loan was $3,470.35.

{4} Plaintiff alleges several acts on the part of Defendants that resulted in overcharges to borrowers upon whom CPI was force-placed. First, Plaintiff's claim alleges that Wachovia exceeded its contractual right to force-place CPI by obtaining coverage in excess of the collision and comprehensive coverage required under the terms of the note. Plaintiff alleges that the CPI policy maintained by Wachovia included, in addition to comprehensive and collision coverage, a Binder Endorsement and an Errors and Omissions ("E&O") Endorsement, which increased the premium by 5 percent. The Binder Endorsement provides coverage during the interval between the date Wachovia receives notice that a borrower's policy has lapsed and the date a CPI certificate is actually issued. If, because of an error, Wachovia is unaware that a borrower's policy has been canceled, and a loss occurs, the E&O Endorsement allows a certificate to be issued and backdated so that the claim can be paid. While Plaintiff characterizes these endorsements as "additional coverage," Defendants argue that they operate solely to extend the period of coverage under circumstances where coverage would not otherwise exist.

{5} Second, Plaintiff claims that Wachovia based the premium for the force-placed insurance on the debtor's gross loan balance rather than the net loan balance. Plaintiff argues that this method of calculating premiums naturally results in higher CPI premium charges to borrowers because the gross loan balance includes unearned interest. Thus, two borrowers who have the same principal loan balance could have disparities in premium charges based on differences in their gross loan balance. Wachovia explains that the premium rates under the gross loan balance method were predicted to generate an "x" amount of premium dollars to a "y" amount of losses. A lender could choose between the gross loan balance method and the net loan balance method. However, if a lender chose to use the net loan balance, a higher premium rate applied in order to achieve a return on the premium in relation to losses that was comparable to the return originally predicted under the gross loan balance method. Thus, Defendants argue that the average premium for any given loan will be approximately the same regardless of whether the gross loan balance or the net loan balance method is used. Furthermore, Wachovia points to the fact that the gross loan balance method of calculating premiums has been approved by the Commissioner of Insurance.

{6} Third, Plaintiff claims that Wachovia's practice of force-placing the CPI for the remaining term of the loan rather than for a period of one year contributed to the higher premiums. When CPI coverage was force-placed, a borrower's credit was extended to cover the amount of the insurance premium. Arguably, basing the premium on the remaining term of the loan increased profits for Wachovia because it generated a larger premium loan to cover the larger premiums. Damages under this theory would vary widely depending upon if and when a borrower replaced the force-placed insurance with private coverage.

{7} Fourth, in addition to Plaintiff's allegation that improper commissions were received by Wachovia, Plaintiff argues that upon a borrower obtaining private insurance, Wachovia charged the borrower an amount greater than the earned CPI premium. A debtor replacing the force-placed insurance with private coverage was required to pay a finance charge and a premium charge which was determined under the Rule of 78's rather than on a pro rata basis. Plaintiff claims that the Defendants' use of the Rule of 78's resulted in higher charges to borrowers. Under the Rule of 78's, the unearned premium is computed by applying changing fractions each month (or year, if unearned premiums are determined annually) to the

premium paid by the insured. The numerator of the fraction changes each month (or year) to a number which corresponds to the sum of the digits of the remaining unexpired term of the policy, and the denominator, which remains constant, is the sum of all the months' (or years') digits corresponding to the entire term of insurance coverage.

{8} For example, a premium paid on January 1, 2000 to cover a one year monthly installment debt would be 57/78 earned on July 1, 2000. Assuming an annual premium of $1000, if the policy were canceled as of July 1, 2000, the premium charge assessed to the borrower would be $730.76. On the other hand, if the premium charge were determined on a pro rata basis, the borrower would be charged 1/12th of the premium for each month CPI coverage was in place. Thus, if the policy were canceled at the end of six months, 6/12 of the premium, or $500, would be owed by the borrower under a pro rata method of assessing charges. Therefore, Plaintiff alleges Defendants' use of the Rule of 78's resulted in additional overcharges to the borrowers. Defendants' position is that each individual borrower's claim would vary depending on his individual loan history. Individuals who never replaced their CPI coverage would not have been impacted in any way by the Defendants' use of the Rule of 78's.

{9} Class counsel contends that Wachovia's actions support common claims of debtors similarly situated to Ms. Pitts. Defendants challenge the use of the class action procedure and Ms. Pitts' standing and adequacy as a class representative.

## II.

{10} On August 21, 1997, Wachovia and the American Security Defendants each filed a motion to dismiss, and in the alternative, a motion for summary judgment. The American Security Defendants based their motions on grounds other than the statute of limitations. Judge Herring denied the motions but declined to make findings of fact or conclusions of law. Therefore, the issues raised by the American Security Defendants in the prior motions are not before the Court and the Court could not issue any order overruling or contradicting Judge Herring's previous ruling. The Court does not believe that Judge Herring's prior order addressed the statute of limitations issues raised by the American Security Defendants in the motion pending before this Court.

## III.

{11} The Court first addresses the class certification issues. The motion for class certification raises many issues for which there is little guidance in North Carolina case law and provides a clear example of many of the conflicting policy issues inherent in the use of the class action vehicle. Plaintiff seeks certification of the following class: "All persons and entities who were borrowers of Wachovia and who were extended additional credit by Wachovia as a result of an insurance loan program designed and marketed by American Security/Standard Guaranty Insurance Company, for the purchase of the American Security/Standard Guaranty collateral protection insurance policy." Amended Complaint ¶ 25. Rule 23 of the North Carolina Rules of Civil Procedure provides: "(a) *Representation.* -- If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued." Certification is within the sound discretion of the trial court. *See English v. Holden Beach Realty Corp.,* 41 N.C. App. 1, 9, 254 S.E.2d 223, 231, *cert. denied*, 297 N.C. 609, 257 S.E.2d 217 (1979), *overruled on other grounds*, *Crow v. Citicorp Acceptance Co.*, 319 N.C. 274, 354 S.E.2d 459 (1987).

{12} The requirements for class certification are: (1) an identifiable class must exist; (2) the class members within the jurisdiction of the court must adequately represent any class members outside the jurisdiction of the court; (3) the class must be so numerous as to make it impracticable to bring each member before the court; (4) more than one issue of law or fact common to the class should be present; (5) the party representing the class must fairly insure the representation of all class members; and (6) adequate notice must be given to the class members. *See Crow v. Citicorp Acceptance Co.*, 79 N.C. App. 447, 339 S.E.2d 437 (1986), *rev'd on other grounds*, 319 N.C. 274, 354 S.E.2d 459 (1987); *Perry v. Union*

*Camp Corp.*, 100 N.C. App. 168, 394 S.E.2d 681 (1990).

{13} The party who is seeking certification has the burden of showing that all of the prerequisites of utilizing the class action procedure have been satisfied. *See English*, 41 N.C. App. 1, 8, 254 S.E.2d 223, 230. The Court begins with the proposition that "a class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Broussard v. Meineke Discount Muffler Shops, Inc.*, 145 F.3d 331, 345 (4th Cir. 1998) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01, 61 L.Ed. 2d 176, ___ (1979). Accordingly, the Court is required to conduct a rigorous analysis before certifying a class. *See General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 102 S. Ct. 2364, 72 L.Ed. 2d 740 (1982). That rigorous analysis has lead the Court to a determination that this is not a suitable case for class certification. For purposes of discussion, the Court has divided the analysis into three separate questions. First, does a class exist? Second, is the class adequately represented? Third, is a class action the superior method for adjudication of the action? As will become apparent, the factors involved in answering the questions sometimes overlap.

## A.

{14} First, the Court must determine if a class exists. Plaintiff asserts claims against Wachovia for breach of contract, breach of duty of good faith and fair dealing, breach of fiduciary duty, fraud, unjust enrichment and unfair and deceptive trade practices. Plaintiff asserts claims against the American Security Defendants for tortious interference with contract, unjust enrichment, and unfair trade practices. Plaintiff argues that claims in this case are appropriate for class action treatment because the causes of action asserted against Defendants arise from uniform conduct. Specifically, the Plaintiff asserts that the language in the promissory notes is the same for all potential class members and that the policies issued by the American Security Defendants were all substantially the same. Wachovia's response to a borrower's breach of the loan contract was uniform -- a standard notice was sent informing the borrower that Wachovia had force-placed insurance on the collateral. Finally, Plaintiff asserts that Wachovia owned a master insurance policy covering all potential class members. Plaintiff argues that these uniform actions give rise to common issues that predominate over individual issues, rendering the case appropriate for class action treatment. Were the analysis to end there, a good argument would exist for certification because there is some common nucleus of operative facts, particularly if the case were limited to a straightforward breach of contract claim. However, a rigorous analysis requires the Court to examine all aspects of the claims and the issues to be determined if the class is certified as requested by Plaintiff.

{15} This case presents a number of potential individual issues that render class treatment inappropriate. First and foremost, the proposed class includes individuals who financed the purchase of an automobile through Wachovia from 1969 to the date of the institution of this lawsuit. As discussed below, the statute of limitations began to run upon the issuance of the CPI certificates. Plaintiffs may not rely on the equitable estoppel doctrine and the discovery rule to overcome the statute of limitations defense, and even if they could, establishing the required element of reliance would necessitate individual showings of proof. At the very least, the question of application of equitable estoppel and the discovery rule would involve individual determinations. Thus, the statute of limitations has run on claims of all potential class members whose CPI certificates were issued more than four years prior to the institution of this action. Individuals whose claims are time barred cannot use the class action device to overcome the defense of the statute of limitations. Conflicting interests exist among potential class members based upon when their CPI certificates were issued.

{16} In addition, it appears to the Court that the nature of Plaintiff's claims may necessitate individualized showings of fact and thus are not appropriate for class action treatment. In order to establish the claim of fraud, a plaintiff must show that: (1) the defendant concealed a material fact; (2) the concealment was reasonably calculated to deceive; (3) the concealment was done with the intent to deceive; (4) the plaintiff was in fact deceived by the concealment, and the plaintiff's reliance was reasonable; and (5) the plaintiff suffered damages as a result of reliance on the defendant's concealment. Accordingly, establishing the elements of fraud requires Plaintiff to make individual showings of facts. For example, Plaintiff must show

that the information concealed was material. The question of materiality may depend on an individual's circumstances, specifically whether the force-placed insurance was more costly than obtaining private insurance. Actual deception is established by proof that the class members relied on the concealment and that such reliance was reasonable. In addition, Plaintiff would have to prove that each class member suffered damages as a result of Wachovia's alleged concealment. The question of damages would turn on a determination of whether force-placed coverage was actually more expensive to the borrower than private insurance. Such individualized questions of fact are not appropriate for class treatment.

{17} Plaintiff seeks to eliminate the individual nature of the reliance determination by having the Court create an irrebuttable presumption of reliance. The Court does not believe that such an irrebuttable presumption is permissible under the circumstances of this case. Plaintiff cites several cases dealing with securities fraud as standing for the principle that where proof of actual concealment of material facts is established, a plaintiff's reliance on such concealment is presumed. *See Affiliated UTE Citizens of Utah v. United States*, 406 U.S. 128, 31 L. Ed. 2d 741, (1972); *Zimmerman v. Bell*, 800 F.2d 386 (4th Cir. 1986). Such a presumption is based on the fraud on the market theory. In short, because investors generally rely on information widely available in the market, when material information is unavailable due to acts of concealment, it is reasonable to assume that individuals relied on the absence of such information in making their investment decisions. Accordingly, courts will presume reasonable reliance in cases alleging securities fraud. The Court does not believe that North Carolina law would extend or apply the fraud on the market theory to the allegations in this case.

{18} The case at bar is clearly distinguishable from securities fraud cases premised on the fraud on the market theory. In securities fraud cases, courts presume that a company's purpose for concealing material information is to induce investors to either buy or sell their holdings. However, in this case, the Court cannot presume that nondisclosure induced borrowers to keep the force-placed CPI coverage. One cannot presume that had borrowers known of the facts alleged in this case they would have chosen to obtain private coverage. It is possible that for some individuals the decision whether to keep the force-placed insurance was based on a comparison between the cost of the CPI and the cost of private insurance. Thus, whether a borrower relied on the absence of allegedly concealed information requires individualized proof. Additionally, the fraud on the market theory is based on the premise that where concealed material information was not otherwise available to investors it cannot be determined whether relying on the lack of information was reasonable. However, in this case material fact -- the availability and cost of the insurance to the borrower -- could have prompted an inquiry into the reason for the price of coverage or affected an individual's action.

{19} The class action device should not be used to eliminate an element of proof that an individual would have to establish if the class did not exist. North Carolina courts require proof of reasonable reliance in actions based on fraud. *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 341 (4th Cir. 1998). Thus, in addition to a showing of actual reliance, individual plaintiffs claiming fraud must prove that such reliance was reasonable. The question of reasonableness turns on an objective inquiry. In this case, whether an individual's decision to keep the force-placed insurance was reasonable turns on a variety of factors, including the cost and availability of private insurance coverage. In fact, Plaintiff's entire theory of recovery is based on the allegation that Wachovia was overcharging its borrowers for CPI coverage. If, in an individual situation, it turns out that a borrower could have obtained the required coverage at a cost less than what Wachovia was charging, such a decision to keep the force-placed insurance may have been unreasonable. Because Plaintiff's claim of fraud requires individualized showings of proof, this Court declines to certify such claim for class action treatment.

{20} Even if the Court accepted Plaintiff's argument that reliance should be presumed, the necessity of proving individual damages makes certification inappropriate. In addition to the claim of fraud, Plaintiff claims that Wachovia engaged in uniform conduct in breach of the universal terms of the promissory notes which are the subject of this action. Plaintiff also claims such conduct breached Wachovia's fiduciary duty and its duty of good faith and fair dealing. Plaintiff's claims are based on the allegation that upon a borrower's failure to maintain collision and comprehensive insurance on the automobile, Wachovia

force-placed insurance coverage that was actually in excess of that permitted by the promissory note. Plaintiff alleges that this excess coverage, combined with other factors, resulted in overcharges to the borrowers. While this Court agrees that Plaintiff's proof with respect to these claims of breach may be common to the class, this Court finds that proof of damages in this case is individualized.

{21} The fact that not all borrowers suffered actual damages as a result of Wachovia's alleged conduct poses a significant certification problem. Courts have recognized that "the actual amount of damages 'is invariably an individual question and does not defeat class action treatment.'" *See Smith v. MCI Telecommunications Corp.*, 124 F.R.D. 665 (D. Kan. 1989). However, the fact that individual damages may vary is different from the situation presented here in which Plaintiff's theory may limit individual recoveries. In this case, an individual's actual loss may depend on whether the force-placed insurance was more expensive than obtaining private insurance. Plaintiff argues, however, that the cost of private insurance for each individual is irrelevant. Instead, Plaintiff's theory of damages is based on the total percentage of overcharge resulting from a combination of factors including excess coverage, the method of determining premiums, and the method of determining finance charges. Under Plaintiff's theory, a class member could recover damages even though the force-placed insurance was cheaper than the insurance the class member could have obtained in the open market. While Plaintiff's theory makes a class action much more manageable, it ignores the requirement that class members prove actual damages.

{22} Plaintiff's damage theory suffers from other deficiencies. Plaintiff has represented to this Court that the theory of damages depends upon a determination of the overall percentage of overcharge to borrowers. The percentage of overcharge would encompass alleged excess coverage, in addition to Wachovia's practices of: (1) basing the premium on the gross loan balance; (2) basing coverage on the entire term of the loan; and (3) reimbursing borrowers who obtained private coverage based on the Rule of 78's. Determining an overall percentage of overcharge would yield damages to be distributed among class members. This theory poses several problems. First, some class members arguably suffered no damage from Wachovia's breach. If the cost of obtaining private insurance was more expensive for an individual than the force-placed coverage, she would not be allowed to share in the recovery, as she suffered no actual damage. On the other hand, some individuals may recover less than their actual damages under Plaintiff's theory. For example, if it is determined that as a class, borrowers were overcharged 10 percent, an individual who paid a one-month premium of $200 would recover $20. However, if that individual could have obtained private insurance for $150 a month, his actual damages would be $50. Thus, under Plaintiff's theory of damages such an individual will recover less than his actual loss. Theoretically, there may even be some debtors who could not have obtained insurance and thus benefited directly from the CPI. In effect, Plaintiff proposes to eliminate the proof which would be adduced in an individual case and substitute a "average" damage calculation to determine distribution to class members regardless of what their individual claim might be.

{23} In *Windham v. American Brands, Inc.*, 565 F.2d 59, 66 (4th Cir. 1977) the Fourth Circuit held that proof of damages was "always strictly individualized" and thus invalidated "[g]eneralized or class-wide proof of damages," recognizing that proof of actual, individual damages was a critical element of a plaintiff's claim. *See also Broussard*, 155 F.3d at 343. Thus, where the calculation of damages is too dependent upon consideration of unique circumstances specific to each individual, class action treatment is not appropriate. Constructing a theory of damages to get around class certification problems has been rejected by courts. In *Broussard*, individual franchisees proceeded as a class action to recover damages for breach of their franchise contracts. *Id.* The Plaintiff had not attempted to calculate the damages that any individual franchisee had suffered, but instead had focused on a hypothetical typical situation. According to the Fourth Circuit, "that this shortcut was necessary in order for this suit to proceed as a class action should have been a caution signal to the district court that class-wide proof of damages was impermissible." *Id.* The class action device should not work to expand the number of claims against a particular defendant by allowing recovery by individuals who suffered no actual loss. *Id.* Plaintiff's theory of damages in this case has the potential to yield just such a result.

{24} In addition to the questions concerning the existence of a class raised above, there are other issues

present which impact the existence of a class, or at the least indicate that one class may not be adequate. The policy issued by American Security Defendants to Wachovia underwent changes throughout the twenty-year history of the program. The LPD Master Policy (LPD I), originally issued in 1978, was revised in 1992 (LPD II). Some borrowers were issued policies only under LPD I. Some were insured only under LPD II. Some borrowers, Ms. Pitts included, were insured under both LPD I and LPD II. The changing circumstances throughout the policy's history support a finding that a single class does not exist.

{25} For example, Plaintiff alleges that the Binder and E&O Endorsements constituted excess coverage for which borrowers bore the cost. However, the facts indicate that the premium structure for these endorsements changed between LPD I and LPD II. Under LPD I Wachovia paid an annual charge for the endorsements; under LPD II the borrower was charged a percent of the premium to cover the endorsements. Proof of damages based on these endorsements would differ between borrowers covered under LPD I and LPD II. In addition, borrowers who made claims under either the Binder or the E&O Endorsement benefited from those endorsements. Plaintiff's argument that Wachovia should not have provided those endorsements is in conflict with the interests of such borrowers.

{26} Furthermore, changes in the notices sent to borrowers accompanied changes in the LPD program. The language of the notices sent by Wachovia is central to Plaintiff's claims of fraud and fraudulent concealment. In fact, Wachovia alleges that chances in the notices included the addition of further explanation of the charges that would be added to the borrower's account. Thus, arguable evidence on the issue of fraud would vary among borrowers based on the content of the notice an individual borrower received.

{27} Additional conflicts of interest are presented by the class as defined by Plaintiff. Plaintiff argues that the $250 deductible under the LPD program was too low, and that this low deductible contributed to inflated premiums. This position creates a conflict of interest between those borrowers who filed a claim (and thus benefited from the lower deductible) and those who did not.

{28} Likewise, Plaintiff's claim that Wachovia received improper commissions from the LPD program creates a conflict among the class. Wachovia has represented that the percentage of the earned premium that Wachovia received as commission varied annually, and thus the LPD program was more profitable during some years than others. Some borrowers had CPI coverage only during profitable years, some only during unprofitable years and some during both profitable and unprofitable years. Thus, different classes of borrowers exist with respect to the question of whether damages were suffered as a result of commissions paid to Wachovia. In addition, borrowers have divergent interests with respect to determining recovery based on commissions. Borrowers who paid premiums during unprofitable years would benefit from allocation of profits to all borrowers based on the profits earned during the entire class period. On the other hand, borrowers who paid premiums during profitable years would argue that because commissions were calculated on an annual basis, damages should be calculated the same way, thus basing damages on the commissions earned during the year in which each borrower paid premiums for CPI coverage.

{29} Finally, Wachovia has a potential claim or set-off against Ms. Pitts. Wachovia alleges that Ms. Pitts' second CPI certificate was canceled retroactively to an earlier date than it should have been. This factual allegation creates another conflict of interest between Ms. Pitts and other potential class members not subject to a counterclaim or set-off.

{30} These varying factual circumstances support this Court's finding that Plaintiff has failed to establish the existence of a single identifiable class.

{31} In order to meet the requirements of Rule 23, there must also be a finding that "persons constituting a class are so numerous as to make it impracticable to bring them all before the court." Rule 23 of the North Carolina Rules of Civil Procedure. The numerosity requirement has not been raised as an issue before the Court, but is a concern to the Court because the record in this case is devoid of any factual support for any

finding of numerosity. Instead, numerosity has been presumed. That presumption may turn out to be correct; however, the burden is on the party seeking class certification to affirmatively establish the basis for a finding of numerosity. A number as low as 14 has been held to be adequate under Rule 23. *See English*, 41 N.C. App. at 9, 254 S.E.2d at 231. The requirement that the basis for numerosity be established has, among other things, the beneficial effect of permitting the court to determine the size, scope, nature and manageability of the proposed class action. Here, the Court does not have the benefit of sufficient information about those factors. While the Court is not declining to certify the class for failure to establish the numerosity requirement, it notes that the requirement is in Rule 23 for a reason and must be met by the party seeking class certification.

{32} In summary, in answering the first question, the Court is not convinced that as proposed by Plaintiff a viable class exists in which common questions will predominate over individual issues.

**B.**

{33} The second question with respect to certification is whether Plaintiff is an adequate representative. In this case, serious questions have been raised about Ms. Pitts' adequacy as class representative. In order to be granted class action certification, Plaintiff must establish that the named representative will fairly and adequately represent the class. *See English*, 41 N.C. App. at 7, 254 S.E.2d at 230; *Crow*, 319 N.C. at 282, 354 S.E.2d at 465. Adequate representation requires that the named plaintiff have no conflict of interest with the members of the class. See *Crow*, 319 N.C. at 282, 354 S.E.2d at 465. In addition, the court must be assured that the class representative will vigorously prosecute the claims. *See English*, 41 N.C. App. at 7, 254 S.E.2d at 230. The class representative has fiduciary duties to the class members. In this case, several factors lead the Court to question the adequacy of Ms. Pitts as class representative.

{34} Evidence presented by Defendants indicates Ms. Pitts has a conflict of interest with other members of the proposed class. First, the premiums under Ms. Pitts' personal insurance policy were higher than the premiums Wachovia charged for the CPI coverage. Second, Ms. Pitts was benefited by Wachovia's use of the gross loan balance to compute her CPI premiums. Specifically, in Ms. Pitts' case, such a method of computation resulted in a lower premium than had the net loan balance been used. Third, there is evidence that Ms. Pitts' premiums were lower under the remaining-term policies than they would have been had annual policies been issued. Accordingly, Ms. Pitts' claims may be in conflict with class counsel's theory of prosecution and with the claims of class members who were not benefited by this practice.

{35} In addition, the theory of prosecution advanced by class counsel presents potential conflicts of interest among class members. Plaintiff's claims are based on the allegation that the coverage provided by the CPI breached the express terms of the loan agreement by exceeding the coverage required under the note. However, some individual borrowers benefited from the Binder and E&O endorsements. Such individuals do not possess a common interest with Ms. Pitts in prosecuting claims against Defendants based on excess coverage. Yet another conflict is created by Plaintiff's allegation that the $250 deductible was too low. The evidence indicates that when Ms. Pitts purchased her own personal insurance she chose a $250 deductible. Again, such facts lead to the conclusion that there is not a sufficient common interest between Ms. Pitts and the class as defined by Plaintiff's counsel.

{36} In addition to potential conflicts of interest, Defendants argue that Ms. Pitts lacks knowledge surrounding the allegations in this case. Challenges to a plaintiff's knowledge of the facts are usually dismissed by courts as irrelevant. Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 3.33 (3d ed. 1992). However, where a lack of knowledge is combined with other negative factors, courts will frequently deny certification. *Id.* In this case, there are several reasons, in addition to lack of knowledge, to question Ms. Pitts' suitability to serve as class representative. The evidence indicates that Ms. Pitts has not materially participated in the prosecution of this action. It appears to this Court that total responsibility for prosecuting this action will fall upon class counsel. Ms. Pitts obviously has some difficulty in managing her own financial affairs. Ms. Pitts' credibility could become an issue before a jury. Absent class members are entitled to representation by someone whose individual situation will not adversely affect the claims of

class members. In addition, Ms. Pitts has an extensive criminal record, including numerous worthless check charges. If Ms. Pitts appears to lack credibility, she stands to prejudice the class members. Furthermore, Ms. Pitts is subject to unique defenses. Specifically, Defendants argue that all claims asserted by Ms. Pitts, except the claim for unfair and deceptive trade practices, are barred by the statute of limitations. All of these negative factors support the Court's conclusion that Ms. Pitts is not an adequate class representative.

{37} Finally, this Court would be remiss if it failed to address the issues surrounding the origin and control of this litigation. Ms. Pitts did not seek a lawyer to redress a perceived wrong. After defaulting on her loan and filing bankruptcy, Ms. Pitts received a form letter from her bankruptcy lawyer suggesting that she might have a claim and that she had the potential to recover, in addition to her actual damages, "a significant sum of money designed to punish the offending lender." The letter from her bankruptcy counsel was drafted in part by class counsel and suggested that she contact class counsel. At that time, class counsel were pursuing other similar claims against other lending institutions in other jurisdictions. It is clear that this lawsuit "is the result of an effort to seek out people willing to have a class action instituted in their names as representatives of a class. Such activity constitutes an abuse of the class action device." *Carlisle v. LTV Electrosystems, Inc.*, 54 F.R.D. 237, 240 (N.D. Tex. 1972).

{38} In addition, class counsel have given Ms. Pitts every reason to believe that she will not be held responsible for any of the costs associated with this lawsuit.[fn. 1] Class counsel candidly admitted during oral argument that class counsel would be responsible, as a practical matter, for all financial costs associated with the case, including out of pocket expenses and attorney fees.

{39} Class counsel have also represented to the court that Ms. Pitts' actual damages, as well as the actual damages of all class members, would be de minimus. Thus, recovery of a sufficient amount to cover the costs and attorney fees invested by class counsel could require a sufficiently large class or the recovery of punitive or treble damages. In summary, the situation could result in the litigation strategy being guided by the needs of class counsel as opposed to the best interests of the absent class members. The existence of such a possibility calls for designation of a class representative with the ability and character to insure that the absent class members' interests are protected.

{40} This case provides a clear example of one of the great tensions presented by class certification questions. On the one hand, the claims asserted on behalf of the purported class are not likely to be pursued without a significant investment of time and money by class counsel. On the other hand, having solicited (albeit indirectly) a less than ideal class representative and having promised not to pursue any claim against her for litigation expenses, class counsel are most likely to become, in fact, the class representative. That is an unacceptable situation because of the potential conflicts of interest. There is little or no precedent to help in resolving that tension in the North Carolina appellate decisions. The Court has weighed the following facts and factors in exercising its discretion in resolving that tension under the circumstances of this case.

{41} The purported class consists of borrowers who allowed their automobile insurance to lapse and could have obtained cheaper insurance than that provided by Defendants. While the record is devoid of any quantification of the dollar amount of the individual claim for damages for breach of contract, it is a safe assumption that the dollar amount would not justify any borrower bringing an individual action. It appears likely that the cost of litigation would exceed the individual claim. Nor are these borrowers likely candidates to sue banks that have held or still hold notes on which the borrowers were or are indebted. It is most likely that the borrowers' insurance lapsed because they were unable to pay the premiums, thus indicating that the class is not comprised of members who could afford individual litigation of this kind, much less be expected to fund a class action. As Plaintiff's counsel clearly pointed out in oral argument, if there is a wrong here, it is unlikely to be redressed in the absence of a class action funded by class counsel.

{42} On the other hand, Plaintiff's counsel are likely to have unfettered discretion in pursuing the litigation. Plaintiff has been told that her counsel will be financially responsible for the costs of the

litigation and they have represented to her that it is unlikely that they would ever seek any reimbursement from her. Even if they were to do so in the face of the representation made to her, it is unlikely that Ms. Pitts would be able to respond to any claim for litigation expenses. She is or has been in bankruptcy. She does not have the personal means to fund this litigation. Her counsel conceded that point in oral argument.

{43} Ms. Pitts did not go looking for a lawyer to redress a perceived wrong, but instead responded to a letter that held out the prospect of remuneration in excess of the actual damages incurred. Ms. Pitts responded to that letter at a time in which she was in financial distress and indebted to the bank. She is not likely to have an independent deciding voice in the conduct or resolution of this litigation. Her criminal record and her financial difficulties cause the court concern from the standpoint of her ability to place the interests of the class members above her own. Her criminal convictions are an indication of a lack of respect for the law and the rights of others. As a class representative, she acts as a fiduciary to other absent class members. Ms. Pitts' criminal record indicates that she may be unable to fulfill those fiduciary obligations.

{44} In addition, the genesis of this lawsuit clearly lies not with any class member seeking counsel to pursue a claim, but with class counsel who had a claim and were looking for a class representative. Class counsel had pursued similar claims against other financial institutions in other states prior to finding Ms. Pitts to act as a representative in this case. They have assumed complete financial responsibility for the cost of the litigation and are dependent upon a recovery or settlement to recoup the time and expense that they will incur in the litigation, all at substantial personal financial risk. While such action on their part is commendable on the one hand, it creates the substantial possibility of a conflict of interest with class members on the other. In this situation, the class counsel will have far more at stake in the litigation than any individual class member, a circumstance that calls for a reliable class representative capable of understanding and fulfilling her fiduciary responsibilities.[fn2]

{45} Based upon the Court's assessment of the entire situation, the Court concludes that Ms. Pitts is not an adequate class representative.

## C.

{46} The final question the Court must answer in connection with certification is whether the proposed class action is the superior method to determine the claims at issue in the case. In making this determination, the trial court is accorded broad discretion. *See Crow v. Citicorp Acceptance Co.*, 319 N.C. 274, 284, 354 S.E.2d 459, 466 (1987); *Faulkenbury v. Teachers' and State Employees' Retirement System of North Carolina*, 345 N.C. 683, 699, 483 S.E.2d 422, 432 (1997). However, that discretion is not unlimited. *See Dublin v. UCR, Inc.*, 115 N.C. App. 209, 221, 444 S.E.2d 455, 462 (1994).

{47} In considering this question, the Court has taken into account many of the same factors cited above. Four factors have influenced the Court's exercise of its discretion on this issue. First, this is a case of de minimus damages. Second, multiple causes of action have been asserted, many of which require individualized proof. Third, ascertainment of damages will be based upon individual situations. Fourth, the expansive nature of the proposed class will result in excessive transaction costs and difficulties. All these factors interrelate with each other.

{48} While the record is undeveloped on the precise range of each individual's damages if liability were found to exist, counsel has indicated in oral argument that the individual damages would not be large, at least not large enough to warrant individual lawsuits. If the claims process would require individuals to prove their de minimus damages, the Court questions whether the claims process will result in a significant enough number of claims to warrant use of the class action procedure. *See, e.g., Goodrich v. E.F. Hutton Group, Inc.,* 681 A.2d 1039 (Del. 1996). The necessity of individual proof on liability issues and damage issues makes it even less likely that claimants will respond. The potential problems with the claims process are exacerbated by the breadth of the proposed class. The class will cover a period of at least twenty years, generating massive record searches and enormous cost. The cost of litigating the issues

could exceed the benefits to be derived from doing so. The Court is not unmindful of the fact that the costs of litigation should not prevent the redress of wrongs. However, the Court is equally mindful that the class action procedure should not be used as leverage to obtain settlements based upon the cost of defending a class action.

{49} The class as proposed is so broad that it encompasses many potential subclasses. Ms. Pitts is not an adequate class representative for some of those subclasses. The breadth of the claims asserted both in time and substance create a serious doubt about the manageability of the case in a class action context. These potential manageability problems have contributed to the Court's determination. After a careful review of the proposed class, the Court has determined that the proposed class action is not the superior method of determining these claims.

{50} The determination that the proposed class is too broad brings the Court to one final issue with respect to certification: should the Court, on its own, attempt to design an acceptable class? In *Ruff v. Parex*, 1999 NCBC 6 (No. 96-CVS-0059, New Hanover County Super. Ct. June 17, 1999) (Tennille, J.) (order denying motion to decertify), the stucco class action, this Court did attempt to define the class action issues in such a way as to permit the class action to proceed, even deferring the damage issues to a determination subsequent to the liability determination. In doing so, the Court exercised its discretion to manage the trial of the case after it had already been designated as a class action and extensive discovery had taken place on the issue of liability.

{51} Where class counsel have proposed a class which the court finds should not be certified, it is not incumbent upon the court to try to fashion a class that is certifiable. The courts are not in a position to make those determinations in most instances, nor should they force upon class counsel representation of a class different from that which class counsel originally volunteered to represent. Class counsel must make sure that they exercise their best judgment in proposing the class. Simply proposing the largest, most onerous class with the hope that it will be certified or that the court will determine on its own the definition of a manageable class or subclasses is not the best procedure. While the courts may, in some instances, exercise their discretion to amend the definition of the proposed class to make the class manageable or certifiable, the burden of proposing a certifiable class remains with class counsel.

{52} Where the court finds that the class representative is inadequate, it may, in its discretion, permit the plaintiff to find other suitable class representatives. If the motion for certification were not being denied on other grounds, this Court would afford Ms. Pitts reasonable time to find adequate class representatives. *See Lupton v. Blue Cross and Blue Shield of N.C.*, 1999 NCBC 3 (No. 98-CVS-633, Orange County Super. Ct. June 14, 1999) (Tennille, J.) (order allowing substitution of class representative in *Giduz v. Blue Cross and Blue Shield of N.C.*, 1999 N.C.B.C. 3 (No. 97-CVS-917, Orange County Super. Ct. June 14, 1999) (Tennille, J.)). Given the Court's other rulings, that is not necessary in this case.

## IV.

{53} The Court next turns to the motion for partial summary judgment filed by the American Security Defendants. Plaintiff's complaint sets forth several causes of action against Wachovia, ASIG and SGIC. As against the American Security Defendants, Plaintiff seeks recovery for tortious interference with contract, unjust enrichment and unfair trade practices. For the reasons stated below, Plaintiff's claims for tortious interference with contract and unjust enrichment against ASIC should be dismissed and all claims against SGIC should be dismissed.

{54} A motion for summary judgment may only be granted if there are no genuine issues of material fact. *See Murray v. Nationwide Mut. Ins. Co.*, 123 N.C. App. 1, 6, 472 S.E.2d 358, 361 (1996). In reviewing a motion for summary judgment the court must consider the record in the light most favorable to the non-moving party. *See Pembee Mfg. Corp. v. Cape Fear Constr. Co., Inc.*, 69 N.C. App. 505, 507, 317 S.E.2d 41, 42 (1984). However, once the defendants properly plead the statute of limitations, the burden of proving the action was timely brought is placed upon the plaintiff. *See id.* In response to the American

Security Defendants' assertion that Plaintiff's claims are time barred, Plaintiff argues that the doctrine of equitable estoppel operates to prevent Defendants from asserting the statute of limitations defense. In addition, Plaintiff argues that its assertion of the doctrine of equitable estoppel raises genuine issues of material fact, thereby making summary judgment on the issue of the statute of limitations inappropriate. Plaintiff is correct that where issues of material fact exist, summary judgment cannot be entered; however, when "the statute of limitations is properly pleaded, and the facts with reference to it are not in conflict, it becomes a matter of law and summary judgment is appropriate." *Id.* at 508 (citations omitted). Similarly, where there is no factual issue as to whether a defendant may be estopped from asserting the statute of limitations, summary judgment is appropriate. *See Integrated Healthcare Facilities, L.P. v. Wesley Long Community Health Serv. Prof'l Office Bldg. Partnership*, 1998 U.S. Dist. LEXIS 4052 *14 (M.D.N.C. 1998).

**A.**

{55} Plaintiff asserts against the American Security Defendants' claims of tortious interference with contract, unjust enrichment, and unfair and deceptive trade practices. Claims for tortious interference with contract and unjust enrichment are barred if not brought within three years from the date the cause of action arose. *See* N.C.G.S. § 1-52. Claims for unfair trade practices are barred if not brought within four years from the date the cause of action arose. *See id.* In cases arising out of contract, the cause of action accrues at the time of the breach. *See Silver v. North Carolina Bd. of Transp.*, 47 N.C. App. 261, 266, 267 S.E.2d 49, 53-54 (1980); *Flexolite Elec., Ltd. v. Gilliam*, 55 N.C. App. 86, 88, 285 S.E.2d 523, 524 (1981). Here, the alleged breach occurred when Wachovia force-placed CPI coverage on borrowers' loans. CPI certificates were sent to borrowers notifying them that coverage had been force-placed. The date of issuance of the CPI certificates provides this Court with a method of determining the date of the alleged breach by Wachovia. Since the alleged breach by Wachovia is the predicate act upon which the claims for interference with contract, unjust enrichment and unfair trade practice are contingent, that is also the date of injury from which the statute of limitations is measured with respect to the claims against the American Security Defendants. Using that measure to determine the date of injury results in most of Plaintiff's claims being barred by the applicable statutes of limitations unless some reason exists to bar their application.

{56} In this case, any claims Plaintiff has against the American Security Defendants arose on the day she was issued the CPI certificate. Thus, the date of issuance is the date of injury for breach of contract purposes, and the breach of contract is the predicate act upon which the claims against the American Security Defendants are based. Plaintiff received three certificates: the first on October 19, 1991, the second on November 30, 1991 and the third on July 20, 1992. Thus, all of Plaintiff's claims arising from the first and second certificates are barred by the statutes of limitations. Plaintiff's claims for interference with contract and unjust enrichment arising from the third certificate were barred by the statute of limitations after July 20, 1995, and her claim for unfair trade practices arising from the third certificate was barred after July 20, 1996.

{57} Plaintiff argues that the statute of limitations did not begin to run with the issuance of the CPI certificates because the Defendants engaged in continuous conduct which interfered with Plaintiff's contractual rights, resulted in Defendants' unjust enrichment, and constituted an unfair trade practice. This argument is without merit and contradicted by well settled North Carolina law that the statute of limitations begins to run on the date of injury. *See Silver*, 47 N.C. App. 261, 266, 267 S.E.2d 49, 53-54; *Flexolite Elec., Ltd.*, 55 N.C. App. 86, 88, 285 S.E.2d 523, 524.

**B.**

{58} In an effort to avoid the statute of limitations defense, Plaintiff argues that the doctrine of equitable estoppel and the discovery rule applies to prevent Defendants from relying on the statute of limitations defense. For the reasons stated below, this Court finds that the doctrine of equitable estoppel is inapplicable to the facts of this case and that, therefore, the American Security Defendants may assert the

applicable statutes of limitation.

{59} The doctrine of equitable estoppel is applied by the courts when the delay in initiating a civil action is a result of defendant's acts, representations or conduct. *See Pembee Mfg. Corp.*, 69 N.C. App. at 509, 317 S.E.2d at 43. In order to rely on the doctrine of equitable estoppel, a plaintiff must establish that the defendant (1) concealed material facts; (2) intended such concealment to be acted on by the plaintiff; and (3) had knowledge, actual or constructive, of the real facts. *See Hensell v. Winslow*, 106 N.C. App. 285, 290-91, 416 S.E.2d 426, 430 (1992). In addition, the plaintiff must establish that she (1) lacked knowledge and the means to discover the real facts in question and (2) relied upon the conduct of the defendants to her prejudice. In applying the doctrine of equitable estoppel, the court does not look at the original conduct upon which the action is based, but rather the subsequent conduct which induces the injured party not to file suit. *See id.* In this case, Plaintiff has failed to plead facts necessary to establish the elements of the equitable estoppel doctrine with respect to the American Security Defendants.

{60} Plaintiff's claims are based on the allegation that material facts were concealed from borrowers. Specifically, Plaintiff points to the absence of certain information in the notices sent to borrowers. Plaintiff argues that the appearance of American Security Defendants' company names on the notices tends to show that these companies actively participated in the notice procedure and played a role in determining the contents of such notice. Although the notices provide clear evidence that the CPI coverage was purchased from these companies, such evidence does not establish conduct amounting to false representation or concealment on the part of the American Security Defendants. In fact, the evidence shows that Wachovia was solely responsible for the notice process and that the American Security Defendants had neither involvement in the notice process, nor any contact with Wachovia's borrowers. However, even if the American Security Defendants had participated in drafting the notices, alleging mere omission of facts from the notices does not establish that Defendants actively concealed material information from Plaintiff.

{61} Even assuming Defendants concealed material facts, Plaintiff has not shown that the American Security Defendants intended for Ms. Pitts to rely on the absence of such information from the notices. Plaintiff argues that it is logical to conclude that the notice was provided to Ms. Pitts with the intention that she would rely on the information therein. Certainly, the party sending the notice intended for the recipient to rely on it as notification that CPI had been force-placed on the borrower's collateral. However, intending for Ms. Pitts to rely on the notice that CPI had been force-placed is not the same as intending her to rely on the conduct of allegedly omitting information from the notice. Simply alleging that Defendants intended for borrowers to rely on the notice is not sufficient to establish the second element of equitable estoppel.

{62} Plaintiff's argument that Ms. Pitts lacked knowledge of and the means to discover the real facts in question also fails. Although there may be a question as to Ms. Pitts' understanding of the legal basis for the claims in this case, Ms. Pitts' deposition testimony makes clear that she did not lack knowledge of the facts in question. Ms. Pitts was aware that the force-placed CPI was more expensive than private insurance. Such information could have prompted her to inquire as to why the price of the insurance was considerably higher than what she was paying in the private sector. Plaintiff has pled no facts suggesting that Ms. Pitts so inquired and was given false information, or that Defendants purposefully withheld or actively concealed information, thereby denying Ms. Pitts the means of discovering the real facts in question. Arguing that Ms. Pitts was not aware of the alleged concealed information is not sufficient. Instead, Plaintiff must show the court that she had no ability to discover the information not contained in the notices. If a party could have obtained facts giving rise to an alleged cause of action by reasonably diligent effort from facts available to him, estoppel does not apply to bar the defendant from relying on the statute of limitations. *See Nash v. Motorola Communications and Electronics*, 96 N.C. App. 329, 332, 385 S.E.2d 537, 539 (1989) (citing *Vail v. Vail*, 233 N.C. 109, 116, 63 S.E.2d 202, 207 (1951)).

{63} Finally, Plaintiff has not shown that Ms. Pitts relied upon the conduct of the American Security Defendants to her prejudice. Plaintiff must establish that had Ms. Pitts known of the facts allegedly

concealed she would have decided to obtain her own private insurance. That Ms. Pitts did not rely on the alleged omissions of the American Security Defendants is made clear by her deposition testimony. Ms. Pitts indicated that upon receiving the notices, she compared the price of the force-placed CPI and discovered that the cost of her own insurance was cheaper. She replaced the CPI insurance twice. Ms. Pitts' testimony shows that she made a conscious decision the third time to keep the Wachovia policy despite the higher overall cost. Thus, it does not appear from the evidence that Ms. Pitts relied on the information (or lack thereof) in the notices when making the decision whether or not to obtain her own private insurance.

{64} In conclusion, Plaintiff has failed to allege facts sufficient to support her allegation that the doctrine of equitable estoppel applies to the American Security Defendants in this case.

{65} In addition to raising the equitable estoppel issue, Plaintiff argues that her claims for unfair trade practices should not be barred based on the discovery rule. Under the discovery rule, to the extent that a plaintiff's claim is based on fraud, the action begins to accrue when the fraud is, or should have been, discovered. *See Ring Drug Co., Inc. v. Carolina Medicorp Enterprises, Inc.*, 96 N.C. App. 277, 281, *385 S.E.2d 801, 804* (1989). Although Plaintiff's claim of unfair trade practices is asserted in Count I of her Second Amended Complaint alleging interference with contract, Plaintiff has indicated in oral argument that the claim is based upon "a separate deception," specifically, the American Security Defendants' failure to disclose material information to the Wachovia borrowers. Plaintiff argues that because the claim for unfair trade practices is based on an alleged concealment of material facts, the statute of limitations does not begin to run until the fraud was or should have been discovered.

{66} Application of the discovery rule would prevent Defendants from asserting the statute of limitations defense. This Court finds that the discovery rule has no application in this case. Ms. Pitts' deposition clearly indicates that she was aware of the overcharge. Ms. Pitts' knowledge that the CPI coverage was more expensive than her private insurance could have prompted her to inquire about the reason for the higher cost. Ms. Pitts' failure to so inquire should not result in her now being able to use the discovery rule to avoid the statute of limitations. The discovery rule is based on principles of fairness. Here, there is no evidence of conduct on the part of the American Security Defendants that prevented her from discovering the alleged concealed information. Plaintiff has provided no evidence of active concealment on the part of the American Security Defendants. Plaintiff's general claim that the American Security Defendants omitted information from the notices sent to Wachovia borrowers by Wachovia does not amount to the level of active concealment necessary to invoke the discovery rule.

Under Plaintiff's theories, a debtor who let her insurance lapse 20 years ago and was issued a CPI policy by American Security and replaced that policy with a private policy 19 years and 11 months ago and paid off her loan 19 years and ten months ago would still be entitled to pursue a claim against the American Security Defendants. The Court does not believe that North Carolina law permits such an emasculation of the statute of limitations on the facts of this case.

{67} The doctrine of equitable estoppel and the discovery rule are inapplicable to the American Security Defendants. As a result, there is no genuine issue of material fact as to the question of whether the statute of limitations defense is available to the American Security Defendants. Accordingly, the American Security Defendants may rely on the statute of limitations as a bar to both claims for interference with contract and unjust enrichment filed after July 20, 1995 and to claims for unfair trade practices filed after July 20, 1996.

{68} All claims against Defendant SGIC are barred by the statute of limitations and are therefore dismissed. Additionally, the claims against ASIG for interference with contract and unjust enrichment are barred by the statute of limitations and are therefore dismissed. Plaintiff's claim against ASIG for unfair trade practices was filed prior to the running of the statute of limitations. To the extent Plaintiff can successfully assert an individual claim against ASIG for unfair trade practices, such claim against ASIG stands.

{69} To succeed on her claim for unfair and deceptive trade practices, Plaintiff will need to establish three factors: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, which (3) proximately causes actual injury to plaintiff. *See Murray v. Nationwide Mutual Ins. Co.*, 123 N.C. App. 1, 9, 472 S.E.2d 358, 362 (1996). In order to prevail on her unfair and deceptive trade practices claim, Plaintiff must prove egregious conduct on the part of Defendants. "The term 'unfair' has been interpreted by our Courts as meaning a practice which offends established public policy, and which can be characterized by one or more of the following terms: 'immoral, unethical, oppressive, unscrupulous or substantially injurious.'" *Id.* Plaintiff must base such a claim on conduct rising to at least the level of fraud. Accordingly, Plaintiff must be able to establish that the American Security Defendants' conduct had the capacity to deceive and that Plaintiff relied on that conduct to her detriment. Absent a showing of actual injury resulting from actions of the American Security Defendants, Plaintiff will not prevail on her claim for unfair and deceptive trade practices. Thus, Plaintiff must establish her claim for unfair and deceptive trade practices in her individual capacity. As discussed above, where proof of actual detrimental reliance must be shown to succeed on a given claim, such a claim is not suited for class action treatment.

## CONCLUSION

{70} When all of the circumstances surrounding the certification of this class are considered, and the problems inherent in Ms. Pitts' selection as class representative are added to them, the Court concludes, in the exercise of its discretion, that the motion for class certification should be denied.

{71} It is therefore, ordered, adjudged and decreed

1. Plaintiff's motion for class certification is denied.

2. The American Security Defendants' motion for partial summary judgment is granted.

This the 2nd day of February, 2000.

Footnote 1. Mr. Blount wrote to Ms. Pitts on June 12, 1997 and asked her to agree to an amendment of her contract which deleted the then existing clause stating she would never be responsible for costs in order that the contract comply with the North Carolina Rules of Professional Conduct. In doing so he made the following representation to her:

> What would this mean for you? As a practical matter, it would mean that if the case were concluded unsuccessfully, we would expect that you would try to repay those costs we have advanced that you could repay. However, courts both elsewhere and in this state have recognized that the reality of class litigation is that lawyers rarely seek to recover costs. The very nature of class actions is such that the average class representative could never repay all the costs if the suit is unsuccessful. Under such circumstances, a lawsuit against an unsuccessful client by her or his own attorney to recover litigation expenses would normally be a waste of time as well as distasteful. Our firm has, in fact, never felt it appropriate to sue a client to recover costs in a case where there was no recovery.

Letter from Blount to Pitts of 6/12/97 at 2.

Footnote 2. The Court finds class counsel to be competent to pursue this class action and has no question about their commitment to pursue the claims asserted. The Court has no question about the character, commitment or capability of counsel.