TOMLIN v. DYLAN MORTGAGE, INC., 2002 NCBC 1

STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
99 CVS 3551

JANICE H. TOMLIN and ISAIAH
TOMLIN, and CONSTANCE A. WIGGINS,
on behalf of themselves and all others
similarly situated,

        Plaintiffs,

        vs.

DYLAN MORTGAGE INCORPORATED
(formerly known as Chase Mortgage
Brokers, Inc.), HOMEGOLD, INC.
(formerly known as Emergent Mortgage
Corp.), ASSOCIATES FINANCIAL
SERVICES OF AMERICA, INC., and
EQUICREDIT CORPORATION OF
AMERICA,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER AND OPINION

{1}        This matter is before the Court on Motion of Plaintiffs for Class Certification. For the reasons set forth below, the Court will certify a class in this case.

*Gulley & Calhoun by Michael D. Calhoun; Hartzell & Whiteman, L.L.P. by J. Jerome Hartzell; Morgan & Maynard, P.L.L.C. by Mallam J. Maynard; North Carolina Justice & Community Development Center by Carlene McNulty; Patterson, Harkavy & Lawrence, L.L.P. by Melinda Lawrence; for Plaintiffs.*

*Hunton & Williams by T. Thomas Cottingham, III, Matthew P. McGuire and Heather Bell Adams, for Defendant HomeGold, Inc.; Kennedy Covington Lobdell & Hickman, L.L.P. by John H. Culver III and Amy Pritchard Williams, for Defendant EquiCredit Corporation of America; Robinson, Bradshaw & Hinson, P.A. by Anthony S. Ketron and Angelique R. Vincent, for Defendant Associates Financial Services of America, Inc.*

**I.**

{2}        Janice and Isaiah Tomlin ("Tomlins") and Constance Wiggins ("Wiggins") seek to represent a class of plaintiffs all of whom used the services of Chase Mortgage Brokers, Inc., also known as Dylan Mortgage Incorporated ("Chase" or "Dylan"), to obtain real estate mortgage loans or refinancing.[1] Most of the class members could be characterized as high risk loan applicants. Plaintiffs seek to recover from Chase allegedly illegal and excessive fees under North Carolina usury

law.

{3} They also assert claims based upon an agreement between Chase and defendant Homegold, Inc., formerly known as Emergent Mortgage Corp. (hereinafter "Homegold" or "Emergent"). Chase agreed to an exclusive arrangement with Homegold. Pursuant to that agreement Chase and Homegold agreed to split the premiums realized when the plaintiffs' loans were resold on the secondary market. The premiums earned allegedly resulted from the excessive interest charged on the loans to plaintiffs. Plaintiffs allege that the agreement supports a claim under N.C.G.S. § 75.1.1 and a claim for breach of fiduciary duty. Plaintiffs seek recovery of those premiums.

{4} Associates Financial Services of America, Inc. ("Associates") and EquiCredit Corporation of America ("Equicredit") are joined because they purchased the loans at issue on the secondary market and thus collected the allegedly illegal fees and interest. Their potential liability will be more fully discussed below.

## II.

{5} The Court will certify a class defined as follows:

> All persons who entered into a mortgage loan transaction secured by real property located in North Carolina with or through Chase Mortgage Brokers, Inc., including its predecessors or successors, under circumstances where the transfer or assignment of that mortgage generated a premium for the loan under the October 10, 1996 Chase agreement with Emergent Mortgage Corp. or its predecessors or successors.[2]

## III.

{6} Rule 23 of the North Carolina Rules of Civil Procedure provides: "(a) *Representation.* -- If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued."

{7} This simple rule is a source of enormous controversy in the American legal system, especially with respect to damage class actions. Until recently, there has not been any objective definitive study of class actions. Within the past year, the RAND Institute for Civil Justice published the results of a detailed study of class actions: Deborah R. Hensler et al., *Class Action Dilemmas: Pursuing Public Goals for Private Gain* (2000). The study attempts to identify the issues surrounding use of damage class actions and make some recommendations based on the findings contained in the report. The authors of the study conclude that the "great big question" about class actions is: Do they, on balance, serve the public well? *Id.* at 401. They also conclude that the answer to that question depends on the public policy views held by the answerer. So, rather than attempt to answer that

question, the study focuses on what can be done to improve the good and eliminate the ill consequences of damage class actions irrespective of policy perspectives. Not surprisingly, the study concludes that trial judges hold the key to improving the balance. *Id.* at 485. It is through the exercise of their broad discretionary powers in certification, management, notice and settlement that trial judges can influence the use of the class action device for good or ill. Accordingly, while certification is in the broad discretion of the trial court, *Frost v. Mazda Motor of America, Inc.*, 353 N.C. 188, 193, 540 S.E.2d 324, 328 (2000); *Crow v. Citicorp Acceptance Co., Inc.*, 319 N.C. 274, 284, 354 S.E.2d 459, 466 (1987); *English v. Holden Beach Realty Corp.*, 41 N.C. App. 1, 9, 254 S.E.2d 223, 231 (1979); *but see Pitts v. American Security Ins. Co.*, 144 N.C. App. 1, 550 S.E.2d 179 (2001), the certification decision requires rigorous analysis. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 2372, 72 L. Ed. 2d 740, 752 (1982). This rigorous analysis is required in part because "a class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Broussard v. Meineke Discount Muffler Shops, Inc.*, 145 F.3d 331, 345 (4th Cir. 1998) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01, 99 S. Ct. 2557, 61 L. Ed. 2d 176, 192 (1979).

> The requirements for class certification are: (1) an identifiable class must exist; (2) the class members within the jurisdiction of the court must adequately represent any class members outside the jurisdiction of the court; (3) the class must be so numerous as to make it impracticable to bring each member before the court; (4) more than one issue of law or fact common to the class should be present; (5) the party representing the class must fairly insure the representation of all class members; and (6) adequate notice must be given to the class members. *See Crow v. Citicorp Acceptance Co.*, 79 N.C. App. 447, 339 S.E.2d 437 (1986), *rev'd on other grounds*, 319 N.C. 274, 354 S.E.2d 459 (1987); *Perry v. Union Camp Corp.*, 100 N.C. App. 168, 394 S.E.2d 681 (1990).

*Pitts v. American Security Ins. Co.*, 2000 NCBC 1, ¶ 12.

{8}     The analysis required in this case is divided into three parts: the existence of a class, the adequacy of the class representatives, and whether the class action is a superior method for determining the issues raised.


     A.

{9}     The causes of action in the complaint in this action, as more clearly delineated in plaintiffs' brief, establish claims common to the members of the class. There are common issues of both law and fact. It is not for the court to determine on certification whether the common questions guarantee a determination of liability. Rather, the question is whether the legal issues and the factual underpinnings of any decision are common to all members of the class.[3] Here, both the liability and

the damages issues have a common nucleus as this case has been structured by plaintiffs' counsel.

{10}   The usury claims advanced by plaintiffs are statutorily based, thus providing common questions of law with respect to the interpretation of the statute. Violation of the statute carries specific penalties. Neither the interpretation of the statute, which is hotly disputed, nor the methodology for application of the statutory remedy will vary between class members. Should there be a finding of liability, each class member may receive a different amount based upon his loan, but the method of determining the amount will not vary. Plaintiffs have further alleged that Chase's common procedure was to charge the same fees to all applicants, thus further reducing the prospect of differences among class members' claims. Plaintiffs' claims are based upon a common interpretation of the limits on fees imposed by Chapter 24 of the General Statutes. The determination of maximum interest rate allowable will affect the named and unnamed class members the same. If, as alleged, Chase employed a common practice with respect to its fee charges, the question of whether those fees violated the statutory limitations will be common to all class members.

{11}   The Court has also carefully considered the issue of damages in this action. It starts with the holding of the Court of Appeals in *Pitts* that: "When a plaintiff establishes an issue of law common to all class members, the possibility of individualized damages is a collateral matter …. The issue of damages, therefore, must be considered in the context of whether the common issues of law or fact predominate over any collateral issue as to individualized damages." 144 N.C. App. at 12-13, 550 S.E.2d at 188-89.  Thus, under the Court of Appeals opinion in *Pitts*, individualized issues of damages are relegated to secondary status in making the decision on whether or not common issues predominate in North Carolina. [4]

{12}   To the extent that each borrower may have a claim for a different *amount* depending on the amount of their loan, that distinction is not sufficient to outweigh the predominance of the common elements of the damage issues, nor will the calculation of those damages pose an insurmountable problem for management of the action as a class action.

{13}   With respect to the breach of fiduciary duty claim, two common questions are central to all plaintiffs' claims. Was Chase obligated to disclose the agreement with Emergent to its customers and, if so, do Emergent and/or Chase bear any liability for that failure? The answers to those questions are unlikely to vary between class members, all of whose loans were covered by the agreement between Emergent and Chase. Central to the determination of Chase's duty to disclose is a determination of the legal relationship between Chase and its customers. Whether Chase was a mortgage broker or a lender is a question which is unlikely to vary between class members. Again, in this case plaintiffs allege and

rely upon common practices of Chase, including the use of exclusive broker agreements with class members. Plaintiffs' claims of breach of fiduciary duty based upon excessive fees are also premised upon common charges and practices. In addition, plaintiffs assert a single measure of damages: disgorgement of the compensation paid to Chase. Thus, common questions of both law and fact predominate on the fiduciary duty claims.

{14}    The three grounds alleged to support the unfair trade practice claim under Chapter 75 also present common issues of fact and law. Plaintiffs allege that the charging of usurious fees is an unfair trade practice. Whether the fees are usurious may involve questions of fact common to the class. The question of whether particular conduct constitutes an unfair trade practice is one for the court. *See Chastain v. Wall*, 78 N.C. App. 350, 337 S.E.2d 150 (1985), cert denied, 316 N.C. 375, 342 S.E.2d 891 (1986). In the present case, that determination would be common to the class members. Plaintiffs also allege that the charging of lump sum origination fees in addition to the itemized fees was an unfair trade practice. The fact and law issues on that claim will not vary among class members. Likewise, the legal significance of the agreement between Chase and Emergent and the question of the duty to disclose that agreement will pose the same issues for the unfair trade practice claim.

{15}    Emergent's liability as a partner, joint venturer or co-conspirator will not vary between class members but will pose the same issues. The class consists of only members whose loans were handled under the Chase/Emergent agreement. Emergent's liability as an assignee will be the same in all cases.

{16}    Finally, the issues surrounding the potential liability of assignees of the class members' loans present common issues. The questions of whether Equicredit or Associates may be held responsible for any liability of Chase and the extent of that liability and whether the holder in due course defense applies or may be eliminated by the Home Ownership Protection Act, 15 U.S.C. § 1641(d)(1), will not vary among class members. There may be some question with respect to the application of the Home Ownership Protection Act to every class member, but the Court believes that divergence of interest, if any, is insufficient to overcome the substantial common issues set forth above.

{17}    The holding of the Court of Appeals in *Pitts* clearly precludes the trial court from considering any possible defenses in determining the existence of a class. It held: "The trial court, therefore, erred by considering possible defenses when it made the determination that the common issues did not predominate over issues affecting individual class members." *Pitts*, 144 N.C. App. at 12, 550 S.E.2d at 188.[5]

{18}    Based upon the foregoing, the Court finds as a fact and concludes as a matter of law that a class

exists and that there exist common issues of law and fact with respect to that class. The Court further concludes as a matter of law that the class issues sufficiently predominate to justify use of a class action in this case.

### B.

{19}   The Court next turns to the adequacy of the class representatives in this action. Plaintiffs bear the burden of proof that their claims are typical of the class and that they will adequately protect the interests of absent class members. Here, plaintiffs clearly satisfy the typicality requirement. Their claims arise out of the same course of conduct as the class claims; they have no conflict of interest; and their claims are based upon the same legal theories which will apply to the class in general. The possibility that Mrs. Wiggins name was forged on her broker agreement is not sufficient to defeat the typicality of her claim.

{20}       The second step in the determination of the adequacy of representation requires some consideration of the appropriate standard to be applied. Plaintiffs submit that the question is whether the named plaintiffs and their counsel will vigorously protect the interests of the class. They argue:

> This inquiry focuses on the interest of the named plaintiffs in the litigation and the qualifications, experience and conduct of the plaintiff's counsel.         Courts have interpreted this provision to be met if it appears that (1) plaintiffs' attorneys are qualified, experienced and generally able to conduct the litigation and (2) plaintiffs' interests are not antagonistic to those of the class they seek to represent. Adequacy of representation and the lack of conflict between the named plaintiff(s) and the class are both presumed in the absence of contrary evidence.

(Pls.' Mem. Supp. Mot. Class Certification at 24.)

{21}   The Court believes the plaintiffs' reliance on this standard is misplaced. The standard was rejected in a recent decision of the United States Court of Appeals for the Fifth Circuit. *See Berger v. Compaq Computer Corporation*, 257 F.3d 475 (5th Cir. 2001).

> The determination of whether the proposed representative will fairly and adequately protect the interests of the class is a matter of utmost importance and not one which can be made on presumptions. The decision on class representation is of such significance because it implicates the due process rights of all members who will be bound by the judgment.

*Id.* at 480 n.8, 481. This requires that the party seeking certification bear the burden of establishing each requirement of Rule 23. *Crow v. Citicorp Acceptance Co.*, 319 N.C. 274, 282, 354 S.E.2d 459, 465 (1987). It requires the court to conduct a thorough analysis even if the parties have agreed or consented to the class representative. The adequacy requirement encompasses three considerations: (1) adequacy of class representatives, (2) adequacy of class counsel and (3) the relationship between the two. *Berger*, 257 F.3d at 479; *Pitts v. American Security Ins. Co.*, 2000 NCBC 1, ¶ 13; 7A Wright et al., *Federal Practice*

*And Procedure* § 1769.1 at 375 (2d ed. 1986).

{22}    In this case there is no question about the adequacy of class counsel. The combination of counsel in private practice and attorneys associated with organizations committed to consumer protection provide ample experience and expertise in the areas of law relevant to this action. Class counsel have appeared before this court in other class action litigation, and the Court is familiar with and confident of their abilities based upon that past experience.

{23}    The court in *Berger* articulated what it believed to be the correct legal standard for determining the adequacy of class representatives as follows: "whether the putative class representatives are 'willing' and 'able' to 'take an active role in and control the litigation and to protect the interests of absentees.'" *Berger*, 257 F.3d at 479. The Court went on to explain:

> As an initial matter, we articulate the adequacy standard outside of any specific statutory context. The district court cited *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 15 L. Ed. 2d 807, 86 S. Ct. 845 (1966), for the notion that "adequacy is a low threshold." This is a misapplication of *Surowitz*. Although "often cited inaccurately to support arguments that plaintiffs with little understanding of the facts or theories of their claims and little incentive to monitor the litigation can nonetheless be adequate class representatives," *Surowitz* did not address the adequacy requirement, but concerned only the verification of a complaint. Just as *Surowitz* did not hold, this circuit has never read *Surowitz* so broadly as to support the proposition that a class representative who does not understand any of the legal relationships or comprehend any of the business transactions described in the complaint nonetheless may be "adequate" for purposes of class certification. To the contrary, we have described "the adequacy requirement [as one that] mandates an inquiry into . . . the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Horton*, 690 F.2d at 484. Likewise, even i n *Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir. 1973), which interpreted Rule 23(a)'s adequacy requirement somewhat more loosely, we insisted that "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Id.* at 72 (5th Cir. 1973). Both understandings--even accepting the variance between them--require the class representatives to possess a sufficient level of knowledge and understanding to be capable of "controlling" or "prosecuting" the litigation.

*Id.* at 482.

{24}    In *Pitts*, the North Carolina Court of Appeals appears to have adopted the interpretation of *Surowitz* the Fifth Circuit found erroneous—adopting a much lower threshold for adequacy. The North Carolina Court of Appeals held:

> Additionally, a plaintiff's knowledge regarding the allegations in her complaint is relevant to her adequacy as a class representative only to the extent that a lack of knowledge prevents the plaintiff from insuring "the interests of absent class members will be adequately protected." *See English*, 41 N.C. App. at 7, 254 S.E.2d at 230. A class representative is not rendered unsuitable because she lacks knowledge of the details of her case or the legal theories presented. *See Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 373, 15 L. Ed. 2d 807, 814 (1966) (plaintiff's lack of understanding of allegations in complaint did not subject her shareholder derivative action to dismissal); 1 *Class Actions* § 3.34, at 3-165 (most courts have rejected challenge to adequacy of class representative

based on the class representative's ignorance of facts or theories of liability). The record in this case shows Plaintiff was unable to explain in her deposition testimony the legal nature of her claims and was unable to define "tortious interference with contract" or "fiduciary." Nevertheless, Plaintiff's testimony demonstrated she understood that her claims related to Wachovia providing her with insurance on her vehicle after she failed to provide the required insurance. She also understood that she was alleging Wachovia breached its contract with her. Plaintiff's lack of knowledge at her deposition as to the specific legal nature of her claims does not render her unable to protect the interests of the proposed class members. Thus, the trial court erred by finding Plaintiff's lack of knowledge rendered her an inadequate class representative.

*Pitts*, 144 N.C. App. at 16, 550 S.E.2d at 191.

{25}     Thus, the North Carolina Court of Appeals held that a class representative need not know the specific legal nature of the class claims in order to protect the interests of those class members. Clearly then, the class representatives in the present case would pass muster under that test. Unlike the proposed class representative in *Pitts*, the named plaintiffs and proposed class representatives appeared and testified at the class certification hearing. The Court was thus able to determine for itself their interest in, commitment to and ability to understand the proceedings and control the case. The Court believes that these class representatives have the ability to understand the legal issues in this case and make independent judgments on behalf of the class. They will not be totally dependent on counsel in making their decisions.

{26}     Also unlike *Pitts*, the named plaintiffs do not suffer from any disability which would impact their credibility with the jury.  Even a criminal record and bankruptcy were insufficient to disqualify the proposed class representative in *Pitts*. 144 N.C. App. at 8, 550 S.E.2d at 186.   In this case the record reveals only that plaintiffs were occasionally rejected for other loans. It is likely that most class members who had to resort to high cost loans would have a less than perfect credit record. This court is hesitant to find a characteristic common to most class members to be a disqualifying factor for representation. To do so would impermissibly narrow the pool of potential class representatives.

{27}     These class representatives have acknowledged their responsibility for and agreed to pay litigation costs which are being advanced by counsel. They had a preexisting relationship with counsel and an interest in their claims which predated their first contact with counsel. They have no personal history that could negatively influence a jury. In contrast, the *Pitts* plaintiff was contacted as a part of a nationwide litigation effort by counsel she did not know, was told she had no real obligation for costs and had held out to her the inducement of a substantial recovery in excess of her actual damages. That situation, when combined with her criminal record and bankruptcy, presented problems for this court in connection with the third test set out in the *Berger* opinion: the relationship between counsel and the class representative. That third test is a recognition of the fiduciary duty of the individual plaintiff to

represent the interest of others. It is not a duty that can be left to counsel alone. In appointing that fiduciary the court must be certain that the class representative is independent, willing and able to control the litigation and faithfully represent the interests of all others in the class.

{28}    These plaintiffs pass the threshold test for adequacy set forth by the Court of Appeals in its *Pitts* opinion, which is now the controlling standard. They would have passed the adequacy test used by the trial court in *Pitts* and they also pass the adequacy test set out in *Berger* for class actions in general.[6]

{29}    Based upon the Court's ability to observe the plaintiffs, their testimony at the certification hearing, their depositions, their personal histories, and the lack of conflicts of interest, as well as their relationship with counsel, the Court concludes, in its discretion, that they will be adequate class representatives and will protect the interests of the absent class members, both in-state and out-of-state.

C.

{30}    The Court next turns to the issue of numerosity. Again, the recent decision of the Court of Appeals in *Pitts* provides guidance to the trial courts on the findings which must be made in connection with a determination of numerosity as well as the legal standard to be applied. Although the issue of numerosity was not challenged in the trial court and the trial court concluded that the numerosity requirement had been met, the Court of Appeals held that the trial court should have made specific findings of fact to support that conclusion.[7] Based upon this holding, it is advisable, if not required, that counsel seeking class certification make a factual record to support a conclusion that the numerosity requirement has been met.

{31}    The Court finds as a fact that there were potentially 3,400 loans made by Chase/Emergent to which the Chase/Emergent agreement applied, and that the number of those loans covering North Carolina property could reach two-thirds of that number and will in all likelihood exceed 1,000. Those loans may well cover property in a number of counties throughout the state, making joinder of all class members more problematic and costly.

{32}    In *Pitts*, the Court of Appeals ruled that an allegation that the existence of a class "reasonably believed to be in excess of 1,000 persons" whose identity could "be determined from records maintained by [d]efendants" was sufficient to establish numerosity where the "good faith" of the estimate was not challenged. *Pitts*, 144 N.C. App. at 18, 550 S.E.2d at 192. Clearly, application of that test to this case supports a conclusion that the numerosity requirement has been met.

D.

{33}     Finally, having determined that a class exists, that plaintiffs are adequate class representatives and that the numerosity requirement has been met, the Court must determine, in its discretion, if the class action mechanism is the superior method of adjudication of the claims in this case. *See Faulkenbury v. Teachers' and State Employees' Retirement System of North Carolina* , 345 N.C. 683, 483 S.E.2d 422 (1997); *Crow v. Citicorp Acceptance Co*., 319 N.C. 274, 354 S.E.2d 459 (1987)[8]

{34}     In making this final determination, this court is guided by the following language from the *Pitts* decision:

> If the trial court finds the party seeking certification has established the three prerequisites to certification, the trial court must then determine whether "a class action is superior to other available methods for the adjudication of th[e] controversy." *Crow*, 319 N.C. at 284, 354 S.E.2d at 466. A class action "should be permitted where [it is] likely to serve useful purposes such as preventing a multiplicity of suits or inconsistent results"; however, the trial court must balance these useful purposes against "inefficiency or other drawbacks." *Id.* at 284, 354 S.E.2d at 466. When making this determination, the trial court is not limited to the consideration of the prerequisites to bringing a class action as previously set forth. *Nobles*, 108 N.C. App. at 132, 423 S.E.2d at 315. Some proper considerations include, but are not limited to, the amount of recovery compared to the cost of administration of the lawsuit, *see Maffei v. Alert Cable TV*, 316 N.C. 615, 621-22, 342 S.E.2d 867, 872 (1986), "the interest of members of the class in individually controlling the prosecution or defense of separate actions," "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class," "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and "the difficulties likely to be encountered in the management of a class action," *see* Fed. R. Civ. P. 23(b)(3). A conclusion as to whether a class action is the superior method of adjudication is within the discretion of the trial court and is binding on appeal absent an abuse of discretion. *Crow*, 319 N.C. at 284, 354 S.E.2d at 466. Nevertheless, the trial court must make findings of fact to support its conclusion. *See Nobles*, 108 N.C. App. at 132-33, 423 S.E.2d at 315-16.

144 N.C. App. at 11, 550 S.E.2d at 188.

{35}     Following that guidance, and in the exercise of its discretion, the court first reaffirms its conclusions set forth above that there are common issues of fact and law which predominate in this action and plaintiffs are adequate class representatives. These two factors substantially support the superiority of adjudication in a class action. The trial court in *Pitts* had found neither prerequisite to exist, but those determinations were reversed by the Court of Appeals. Obviously, if there are neither adequate representatives nor predominant class issues, the superiority of adjudication as a class action is not likely to exist. Where they do exist, they support a decision to use the class action mechanism.

{36}     The Court also finds that the useful purposes of class actions in preventing multiplicity of lawsuits and inconsistent verdicts is served in this instance. See *Dublin v. UCR, Inc*, 115 N.C. App. 209, 444

S.E.2d 455 (1994).

{37}    The next factor the Court has considered is the nature of the damages in this case. They are not de minimus.[9] If plaintiffs prevail they stand to recover all the fees they paid for their mortgages obtained through Chase. Those fees could run into thousands of dollars each. Statutory penalties and treble damages could increase that amount. The damages are significant in amount and significant to the homeowners since their mortgages and the equity in their homes could be affected. It is therefore likely that class members would make claims if plaintiffs prevail and a claims process is invoked.

{38}    Next, the Court has considered whether there are any individualized issues which adversely impact the superiority of the class mechanism. It finds no such issues based upon its understanding of plaintiffs' claims. Were such issues to exist, the Court would be required to give them little weight. While acknowledging the existence of individualized liability and damage issues found by the trial court, the Court of Appeals in *Pitts* held: "Finally, the trial court's remaining findings regarding individualized issues of proof, including proof as to damages, are collateral matters in this case that do not outweigh the useful purposes in bringing a class action such as preventing multiplicity of suits and inconsistent results." 144 N.C. App. at 19, 550 S.E.2d at 192.  The Court of Appeals also held: "When a plaintiff establishes an issue of law common to all class members, the possibility of individualized damages is a collateral matter." *Id.* at 12, 550 S.E.2d at 189.

{39}    The Court has considered the fact that this is a consumer finance case. Consumer finance cases frequently use the class action mechanism because the contractual or statutory interpretation issues are uniform across the class and the amounts at issue per class member make use of individual suits economically inefficient. Properly structured, consumer finance cases can provide a means of contesting lending practices which would not otherwise be subject to challenge for economic reasons. *See Maffei v. Alert Cable TV*, 316 N.C. 615, 620, 342 S.E.2d 867, 871(1986); *Pitts*, 144 N.C. App. at 14, 550 S.E.2d at 189.

{40}    Perhaps the most difficult question raised by consumer finance cases involving pure fraud claims is the requirement of individual proof of reliance in those cases. In this case, the usury issues do not involve reliance issues, nor will the validity or invalidity of some of the fees be dependent upon the state of mind of the class member. Whether or not certain actions constitute an unfair trade practice will be a question of law for the Court. Plaintiffs have proceeded on the following theory:[10]

> Defendant characterizes plaintiffs' claims, other than their usury claim, as based upon the allegation that "they could have gotten a better loan" and argue that issue requires individualized consideration of financial circumstances and loan terms of each borrower.

The essence of plaintiffs' Chapter 75 and breach of fiduciary duty claims is not, however, that plaintiffs "did not get the best loan they could have." For claims actually raised by plaintiffs - in contrast to the claims which defendant set up as a straw man - the financial circumstances and life histories of the borrowers are irrelevant, as are the specifics of the contacts with Chase. The claims rise or fall upon plaintiffs establishing the factual predicate of: the Agreement between Chase and Homegold and the conduct which that agreement compelled (an incentive to inflate interest rates for their mutual profit, exclusive dealing, and secrecy) and Chase's uniform practice of charging usurious, mislabeled and duplicative fees, and upon this Court's determination of the legal significance of those facts in the context of the mortgage broker/borrower relationship defined by Chase's broker agreement.

Nor are plaintiffs' damages measured by what hypothetical loan they might have gotten from some other lender; rather, they are measured by what Chase was paid, either by plaintiffs or Homegold. The charging of an unlawful fee is injury in and of itself.

(Pls' Reply Def. Associate's Opp'n. Class Certification at 1.)

{41}     In *Pitts*, the Court of Appeals recognized that *each* class member would be required to present evidence to establish damages and avoid the statute of limitations. However, it held that those issues were either irrelevant or collateral to the class certification determination.

{42}     The Court has also considered whether there are excessive transaction costs or management difficulties raised by the nature of the case which would influence the determination of the superior method for handling this particular case.[11] It does not find any management difficulties that cannot be overcome and which negatively impact the use of the class action mechanism. Unlike *Pitts*, the time period covered raises no statute of limitation problems and is not excessively long. While the fact that Chase has gone out of business poses some discovery problems, those are not problems arising from the use of the class mechanism.

{43}     Plaintiffs have filed more than one claim, but there is no multitude of claims leading the Court to conclude that counsel has structured the case to create the greatest leverage rather than focusing on the real substantive issues. The claims are limited to the period in which the Chase/Emergent agreement was in place, and the use of the class action mechanism will not result in the elimination of individualized proof otherwise required. The period covered does not encompass different agreements as existed in *Pitts*; it only covers a period in which the one agreement was in place. As noted above, the size and significance of the claims will likely result in the claims process being utilized if plaintiffs prevail. The size of the class and identification of the class members do not present insurmountable problems.[12] There is no issue here of the cost of the litigation surpassing any potential recovery or payout to claimants. *See Maffei v. Alert Cable TV*, 316 N.C. 615, 621-22, 342 S.E.2d 867, 872 (1986). Unlike *Pitts*, the trial court has found no difficulties likely to be encountered in the management of the class action. *See* Fed. R. Civ. P. 23(b). The Court has further considered each of the other factors

enumerated by the Court of Appeals in *Pitts* and found no factors which the court believes would render the class action mechanism an inferior method of adjudicating this dispute.

{44}    The Court finds as a fact and concludes as a matter of law that the class action mechanism is the superior method for adjudication of the claims in this case.

{45}        It is, THEREFORE, ORDERED, ADJUDGED and DECREED that plaintiffs' motion for class certification is granted, and the Court hereby certifies a class defined as follows:

> All persons who entered into a mortgage loan transaction secured by real property located in North Carolina with or through Chase Mortgage Brokers, Inc., including its predecessors or successors, under circumstances where the transfer or assignment of that mortgage generated a premium for the loan under the October 10, 1996 Chase agreement with Emergent Mortgage Corp. or its predecessors or successors.

This 1st day of February 2002.

Ben F. Tennille
Special Superior Court Judge
For Complex Business Cases

---

[1] The Court has entered an order today permitting an amendment to the Complaint which will add Moses and Eva Kennedy and David and Letha Seymour as additional class representatives.  The parties, through counsel, have consented to the consolidation of another class action, *Troy v. Caviness*, recently remanded to the General Court of Justice in New Hanover County from the United States District Court for the Eastern District of North Carolina.
  The adequacy of Mr. Troy, Mr. and Mrs. Kennedy, and Mr. And Mrs. Seymour may be contested. Accordingly, this order does not govern their adequacy of as class representatives, but it does govern cerification issues for class treatment for which they seek to become class representatives. Consolidation of the Troy case will also result in the addition of a new defendant, Associates Home Equity Services, Inc. Counsel have consented to a stay in a similar action in Duplin County.

[2] As this litigation progresses, the Court may divide this certified class into subclasses to preserve the maximum protection to all class members.

[3] Summary judgment motions and motions to dismiss should not be conflated with certification. Federal Courts frequently decide summary judgment motions before certification motions. *See* Deborah H. Hensler et al., *Class Action Dilemmas: Pursuing Public Goals for Private Gain* 446 (RAND Institute for Civil Justice 2000).  This salutary practice is based upon judicial economy. It makes little sense to put a would be class representative to the expense of notice when the underlying claim may be subject to dismissal. *See Gaynoe v. First Union Direct Bank*, 2001 NCBC 1.  It is equally inefficient for the court to spend its time on certification issues when the case may be dismissed on the merits. Summary judgment motions frequently help to define or refine the issues thus making notice, when given after certification, more understandable and meaningful to class members. Certainly, if a

sole class representative may have his individual claim dismissed for a reason peculiar to him, it makes little sense to determine a class certification motion when there is or will be no class representative. The Court is cognizant of the decision of the North Carolina Court of Appeals in *Pitts v. American Security*, 144 N.C. App. 1, 550 S.E.2d 179 (2001), in which the Court vacated the trial court order granting summary judgment to American Security and ordered that the motion for summary judgment be reheard after remand. Wachovia had also filed motions for summary judgment which had been denied by the trial court, but those orders were not vacated, leaving some ambiguity as to the procedures trial courts should apply.

[4] Even if the Court were to consider the damage issues on an equal plane with liability issues, its decision would not change. The elements of the damage claims here are common. They will depend in large part on statutory interpretations and the legal significance of the agreement between Chase and Homegold. In that sense this case is more like *Faulkenbury v. Teachers' and State Employees' Retirement System*, 345 N.C. 683, 483 S.E.2d 422, (1997) where the court found that the predominant element of damages was more important that the individualized amount. On the other hand, each class member in *Pitts* was required to prove an individualized element of damages, i.e., whether or not they could have obtained cheaper insurance than the force placed insurance and that they relied on Wachovia in making the decision about finding other insurance. It was the *element* of damages, not the *amount* that was significant to the trial court decision in *Pitts*. The Court of Appeals held that, where there was a single common liability issue, individualized damage issues were collateral and outweighed.

[5] In the event this holding of the Court of Appeals may subsequently be found to be too broad, this court holds, in its discretion, that common issues predominate even after consideration of any defenses raised. The weight of authority in the federal courts and other states would appear to be contrary to the holding of the Court of Appeals. *See, e.g.*, *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir. 1998). This case differs substantially from *Pitts* in that Ms. Pitts sought certification of a class covering twenty years for a breach of contract claim, thus raising significant statute of limitations issues on many claims. Here, plaintiffs' claims all arise after consummation of the agreement between Chase and Homegold in 1996.

[6] The *Berger* court went further and discussed the adequacy of class representatives in shareholder derivative cases under the federal statutes; however, those were separate holdings not applicable here. This court has only relied upon those portions of the *Berger* decision applicable to Federal Rule 23 in general.

[7] The Court of Appeals held: "In this case, the trial court did not make any findings regarding the numerosity of the proposed class…. Generally, when a trial court fails to make required findings of fact, the case must be remanded to the trial court for entry of findings. However, when the evidence in the record as to a finding is not controverted, remand is not required." *Pitts*, 144 N.C. App. at 18, 550 S.E.2d at 192 (citations omitted).

[8] The trial court's determination that a class action was not the superior method of resolving the issues raised in the plaintiff's complaint in that action was determined to be an abuse of discretion. Because the Court is considering some of the same factors used in the trial court in *Pitts*, it is necessary to distinguish the treatment of those factors in the trial court opinion in *Pitts* from their treatment by the Court of Appeals and distinguish both from the treatment of those factors in this case. It is clear, however, that if the determination that a class action was not the superior method of adjudication was an abuse of discretion in *Pitts*, a similar determination at the trial level in this case would likewise be considered an abuse of discretion by the Court of Appeals.

[9] The trial court in *Pitts* ruled: "While the record is undeveloped on the precise range of each individual's damages if liability were found to exist, counsel has indicated in oral argument that the individual damages would not be large, at least not large enough to warrant individual lawsuits. If the claims process would require individuals to prove their de minimus damages, the Court questions whether the claims process will result in a significant number of claims to warrant use of the class action procedure." 2000 NCBC 1, ¶ 48 (see also the discussion of damages at ¶ 22 and ¶27). The appellate court held: "The record does not contain any evidence as to the actual amount of damages the class members would recover should they succeed on their claims: therefore, the record does not contain competent evidence to support the trial court's finding regarding the de minimus nature of damages."

[10] Having advanced this theory for purposes of class certification, any future deviation from the theory might require the court to reconsider the class certification issues.

[11] As noted above, the trial court in *Pitts* found, based upon counsel's admissions in oral argument, that the individual damages were small. It went on to hold:

> The necessity of individual proof on liability issues and damage issues makes it even less likely that claimants will respond. The potential problems with the claims process are exacerbated by the breadth of the proposed class. The class will cover a period of at least twenty years, generating massive record searches and enormous cost. The cost of litigating the issues could exceed the benefits to be derived from doing so. The Court is not unmindful of the fact that the costs of litigation should not prevent the redress of wrongs. However, the Court is equally mindful that the class action procedure should not be used as leverage to obtain settlements based upon the cost of defending a class action.

2000 NCBC 1, ¶ 48. Defendants had also produced sworn statements as to the unavailability of computer records for a majority of the twenty-year period covered in the Complaint. The Court of Appeals held: "Similarly, the record does not contain any evidence to support the trial court's finding that 'the expansive nature of the proposed class will result in excessive transactions costs and difficulties.'" *Pitts*, 144 N.C. App. at 19, 550 S.E.2d at 192.

[12] Recognizing the low threshold for numerosity required by the Court of Appeals in *Pitts*, the Court notes here the concern that failure of plaintiffs' counsel in other cases to provide the court with specific information on the question of numerosity makes it more difficult for the trial courts to determine manageability issues when deciding the superiority question. Simply estimating the size of the class is not always sufficient to determine questions of inefficiency and the existence of other drawbacks. That problem does not exist in this case.