ALEXANDER v. DAIMLERCHRYSLER CORP., 2002 NCBC 2.

| | | |
|---|---|---|
| STATE OF NORTH CAROLINA | | IN THE GENERAL COURT OF JUSTICE |
| WAKE COUNTY | | SUPERIOR COURT DIVISION 01 CVS 3390 |

| | | |
|---|---|---|
| TONY W. ALEXANDER and wife SARAH M. ALEXANDER; ROGER L. MILLER and wife PENNY W. MILLER; SHARON BELL RICH; DONNY L. WILLIAMS and wife DEBRA C. WILLIAMS, on behalf of themselves, and others similarly situated, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | **ORDER AND OPINION** |
| v. | ) ) | |
| DAIMLERCHRYSLER CORPORATION, and DAIMLERCHRYSLER MOTORS CORPORATION, and HICKORY AUTOMALL CHRYSLER PLYMOUTH, INC.; AUTO USA, INC., d/b/a Empire Chrysler Dodge Jeep Eagle; and YSU AUTOMOTIVE, INC., f/k/a Shelby Chrysler Plymouth Jeep Eagle, Inc., on behalf of themselves, and other Chrysler dealers similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

{1}      THIS MATTER is before the Court based upon Plaintiffs' Notice of Withdrawal of Motion for Class Certification and Plaintiffs' Motion to Amend Complaint pursuant to which plaintiffs seek "to remove any motions for class action certification." The proposed Amended Complaint eliminates all allegations with respect to class treatment which existed in the original complaint. Defendants DaimlerChrysler Corporation and DaimlerChrysler Motors Corporation (collectively "DaimlerChrysler") object to the Notice of Withdrawal and Motion to Amend on the basis that the notice and motion fail to provide notice to class members that these individuals are no longer being represented by plaintiffs, and that they fail to inform the court of the reasons for dismissal of the class allegations. DaimlerChrysler asserts, correctly, that the procedure for removal of class allegations in a complaint is governed by Rules 41 and 23(c) of the North Carolina Rules of Civil Procedure. DaimlerChrysler does not object to elimination of the class issues from this lawsuit on the merits; it

only objects to the procedure employed by plaintiffs' counsel. For the reasons set forth below, the Court holds that Court approval is required for amendment of a complaint which eliminates previously asserted class action claims and allegations, and that certain information is required of the parties and their counsel before the Court can enter a final ruling on plaintiffs' Motion to Amend.

*Abrams & Abrams, P.A., by Douglas B. Abrams; Suggs, Kelly & Middleton Lawyers, P.A., by Kenneth M. Suggs, D. Michael Kelly, Bradford Simpson, and Richard Middleton; H.C. Kirkhart for plaintiffs.*

*Womble, Carlyle, Sandridge & Rice, PLLC, by Burley B. Mitchell, Jr. and Christopher T. Graebe; Bryan Cave, LLP, by Charles A. Newman and Kathy A. Wisniewski, for Defendants DaimlerChrysler Corporation and DaimlerChrysler Motors Corporation.*

*Teague, Rotenstreich & Stanaland, LLP, by Kenneth B. Rotenstreich and Paul Daniels for Defendants Hickory Automall Chrysler Plymouth, Inc. and YSU Automotive, Inc., f/k/a Shelby Chrysler Plymouth Jeep Eagle, Inc.*

*Robinson & Lawing, LLP, by John R. Taylor for Defendants Auto USA, Inc., d/b/a Empire Chrysler Dodge Jeep Eagle.*

## I.

{2}     The procedural history of the dispute between DaimlerChrysler and counsel for plaintiffs arising out of claims under the North Carolina Lemon Law, N.C.G.S. §§ 20-351 to –351.10 (1999), is long and bitter. It has a bearing on the issues currently before the Court.

{3}     It begins in the case of *Pleskach v. DaimlerChrysler Corporation* (99 CVS 04161), which was filed in Wake County. That suit was an individual action against the defendant DaimlerChrysler alleging violations of the North Carolina Lemon Law. Mr. Kirkhart, counsel for plaintiffs in this action, represented the plaintiffs in *Pleskach.* DaimlerChrysler was sanctioned in that case for violations of discovery orders and never obtained a protective order covering discovery materials. As a result it was required to produce the names of thousands of purchasers of vehicles which had been repurchased by DaimlerChrysler from dissatisfied customers all across the United States. No protective order was ever entered in *Pleskach,* and the case was subsequently settled.

{4}     During the *Pleskach* case, Judge Bullock entered a temporary restraining order dated January 13, 2000 which restrained Mr. Kirkhart from "any actions that use discovery material to generate litigation." Specifically restrained was the use of solicitation letters, an example of which was attached to the restraining order. The TRO was returnable on January 24, 2000 before Judge Henry V. Barnette, who entered a preliminary injunction which he subsequently withdrew on February 28, 2000. The injunction prohibited Mr. Kirkhart from soliciting clients based upon information obtained in discovery in *Pleskach.*

{5}     The week following Judge Barnette's withdrawal of his injunction, DaimlerChrysler filed a separate action against Mr. Kirkhart alleging that he had improperly and illegally used information from discovery in *Pleskach* to solicit clients for other individual suits against DaimlerChrysler. The complaint in *DaimlerChrysler v. H.C. Kirkhart and the Law Offices of H.C. Kirkhart* (00 CVS 02556) was filed in Wake County on March 6, 2000 and alleged, among other claims, common barratry, libel, unfair and deceptive trade practices and tortious interference. DaimlerChrysler sought injunctive relief.

{6}     On March 16, 2000, Mr. Kirkhart filed individual actions on behalf of several of the plaintiffs in the current action, including the Alexanders (Alexander County), the Millers (Wilkes County) and Ms. Rich (Cleveland County). Each may have been mentioned in the *Pleskach* discovery and contacted by Mr. Kirkhart as a result. It is clear that whatever contact Mr. Kirkhart had with them resulted in his subsequently representing them in litigation against DaimlerChrysler in North Carolina.

{7}     On May 12, 2000, Judge Bullock entered an order in the *Kirkhart* case which enjoined Mr. Kirkhart "from the use of information that was obtained through discovery provided by the Plaintiff to generate litigation against the Plaintiff." The order specifically held: "Defendant is specifically prohibited from sending letters of solicitation to potential litigants based on discovery material."

{8}     On June 16, 2000, Judge Bullock amended his order of May 12, 2000. In doing so he specifically rejected an argument made by Mr. Kirkhart that he should be allowed to solicit business using information derived from discovery materials in the *Pleskach* case. His order stated:

> ORDERED that the defendants be and are hereby restrained from using information that the defendants obtained from the plaintiff through discovery requests to generate unrelated litigation against the plaintiff, and may not use such materials for illegal solicitation.
>
> It is also ORDERED that the defendants in their solicitation must obey laws relating to unfair and deceptive trade practices, common law barratry, G.S. section 84-38, which prohibits the solicitation of legal business, and Rule 26(b)(1) of the North Carolina Rules of Civil Procedure.

{9}     On June 27, 2000, the Court of Appeals stayed the injunction issued by Judge Bullock.

{10}    On January 31, 2001, the North Carolina Supreme Court reversed the stay entered by the Court of Appeals.

{11}    On March 21, 2001, Mr. Kirkhart and his co-counsel Douglas B. Abrams took voluntary dismissals on behalf of their clients, the Alexanders, the Millers and Ms. Rich, and refiled their individual claims in this case in combination with class action allegations and the Williams' claims. The case was subsequently assigned to the North Carolina Business Court on June 12, 2001. On November 7, 2001, plaintiffs filed a "Notice of Withdrawal of Motion for Class Action Certification"

with this Court. Defendants DaimlerChrysler filed their motion for contempt and immediate disqualification of Mr. Kirkhart and his co-counsel on November 12, 2001. This Court transferred that motion to Judge Bullock by order dated February 13, 2002.

{12} A hearing was held on the present motions on February 8, 2002. On February 19, 2002, the Court of Appeals dissolved Judge Bullock's injunction, but left DaimlerChrysler's claims for trial. *DaimlerChrysler Corp. v. Kirkhart*, __ N.C. App. __ (February 19, 2002) (No. COA00-1370).

## II.

{13} At issue here is the proper procedure for withdrawing class action claims while continuing to pursue plaintiffs' individual claims. While neither counsel for plaintiffs nor counsel for defendants cited the Court to its previous ruling in *Lupton v. Blue Cross and Blue Shield*, 1999 NCBC 3, this Court finds that decision instructive here. Rather than rewrite that opinion here, it will be quoted at length where relevant. It is becoming increasingly clear that judicial oversight is critical to the proper use and prevention of abuse of the class action mechanism. *See* Deborah R. Hensler et al., *Class Action Dilemmas: Pursuing Public Goals for Private Gain* (Rand Institute for Civil Justice 2000). In that study of class actions, the authors made the following observation about judicial oversight:

> Judges play a unique role in damage class actions: Without the judge's decision to grant certification, a class action lawsuit does not exist. Without the judge's approval, a lawsuit cannot be settled. Without a judge's decision to award fees, the class action attorneys cannot be paid. Moreover, judges have special responsibilities while the litigation is ongoing: They approve the form and content of notices to class members that a class action has been certified or settled; they determine when and where fairness hearing will be held, how long they will be, and who can participate; they decide whether non-class members can intervene in the litigation, and whether lawyers representing objectors will receive any compensation. Even after a case is resolved, judges may continue to play a role by overseeing the disbursement of settlement funds.

> How judges exercise these responsibilities determines the outcomes of the class actions that come before them. But even more important, how judges exercise these responsibilities determines the shape of class action to come.

*Id.* at 445; *see also Tomlin v. Dylan Mortgage, Inc.*, 2002 NCBC 1, ¶ 7.

{14} Plaintiffs seek by the amendment of their complaint to discontinue the class claims without any class relief having been afforded. Rather than file a voluntary dismissal of the class claims under Rule 41(a) which specifically recognizes the limitations contained in Rule 23(c), counsel for plaintiffs attempted to circumvent the requirements of Rule 41 and Rule 23(c) by either simply withdrawing the motion for class certification (presumably permanently) or eliminating the class claims by amendment. Either is tantamount to a voluntary dismissal.

{15} Rule 41(a) provides in pertinent part:

(a) Voluntary Dismissal; Effect Thereof.—

(1) By Plaintiff; by Stipulation.— Subject to the provisions of Rule 23(c) and of any statute of this State, an action or any claim therein may be dismissed by the plaintiff without order of court . . . by filing a notice of dismissal at any time before the plaintiff rests his case . . .

N.C.G.S. § 1A-1, Rule 41 (1999).

{16}    As set forth above, Rule 41(a)(1) is limited in its application by the provisions of Rule 23(c), which provides: "A class action shall not be dismissed or compromised without the approval of the judge. In any action under this rule, notice of a proposed dismissal or compromise shall be given to all members of the class in such manner as the judge directs." N.C.G.S. § 1A-1, Rule 23(c). In effect, plaintiffs ask the court to hold that Rule 23(c) does not apply until such time as the court either certifies a class or denies class certification. As this Court found in *Lupton*:

> The leading class action treatises support the notion that precertification dismissals require court approval. For example, 3 Newberg, *Class Actions*, § 4920 at 404 (1977) provides:
>
> The applicability of Rule 23(e) between the time the action is brought and the date of certification of the class has been raised in several cases. Courts have recognized that in order to effectuate the purpose of Rule 23(e), it must apply from the commencement of an action filed as a class action until such time as there is a ruling denying the class action.
>
> Similarly, 7A Wright & Miller, *Federal Practice and Procedure*, § 1797 at 236-7 (1972 ed.) offers the following:
>
> A practical problem exists involving the application of Rule 23(e) during the period between the filing of the action and the determination under subdivision (c)(1) of whether it can be maintained on a class basis. This problem was specifically dealt with by the district court in *Philadelphia Electric Company v. Anaconda American Brass Company* . . . . The court held that during the interim between instituting the action and a decision under Rule 23(c)(1), the action must be presumed to be proper for purposes of subdivision (e). The court then went on to hold that its approval of the settlement had to be held in abeyance pending a determination of the class action question.
>
> As demonstrated above, policies articulated by the federal courts indicate that Rule 23(e) approval is necessary at the precertification stage in order for the court to fulfill its obligation to police the conduct of the parties and their attorneys and safeguard the interests of absent class members.
>
> The Court is persuaded by the analysis of the federal courts.

1999 NCBC 3, ¶¶ 22-23.

{17}    To hold that Rule 23 does not apply until a class has been certified would prevent the trial court from fulfilling its proper functions in cases containing class action claims. As pointed out in *Lupton*:

> Because of the potential for abuse outlined above, courts have two important roles in class actions: to protect the interests of absent class members and to police the use of class action allegations. The requirement of court approval of dismissals to all actions begun as class actions furthers these objectives by limiting the abuses in several ways. First, if the court must approve dismissal or settlement, plaintiffs are less able to act improperly. If they misuse the class action device, the court has the power to disapprove the settlement, disallow the dismissal, and force the plaintiffs to proceed. This measure reduces the incentive to plaintiff's counsel to misuse the class action device solely in an effort to leverage a settlement.

Likewise, defendants have less incentive to act improperly. Defendants are less likely to buy off the named plaintiff at the expense of absent class members if they know the court must pass on the settlement. Finally, the interests of absent class members can be protected by court review. Where conflicts of interest occur within a class, the court is the only guardian of the interests of the absent class members. The Court may also serve the function of preventing loss of class members rights where tolling issues are involved.

*In re "Agent Orange" Product Liability Litigation*, 597 F. Supp 740 (E.D.N.Y. 1984) lists some commonly recited purposes of the requirement of court approval:

The purpose of approval is to assure that any person whose rights would be affected by settlement has an opportunity to support or oppose it, prevent private arrangements that may constitute "sweetheart deals" contrary to the best interests of the class, protect the rights of those whose interests might not have been given due regard by the negotiating parties, and assure each member of the class that the opportunity to express views and to be heard on matters of vital personal interest have not been violated by others who have arrogated to themselves the power to speak and bind without consultation and consent. *Id.*

. . . .

Courts have recognized other justifications for the requirement of court approval. In addition to requiring court approval, Rule 23(e) also requires that notice of the dismissal be given to all absent class members. While federal courts have generally held that this requirement is not absolute in all precertification cases, giving the judge discretion to waive the notice requirement where there has been no collusion or showing of prejudice to any party . . . this determination can only be made upon review of the dismissal by the judge. Thus, the requirement of court approval assures that the notice requirements of Rule 23(e) are met.

In keeping with the court's obligation to police the use of the class action vehicle, court approval provides the judge with a check against forum shopping. Because class actions often involve diverse parties, counsel may be tempted to engage in forum shopping. Court approval of dismissals prevents counsel from dismissing class action claims upon discovery of adverse law in a jurisdiction, or upon assignment of the case to an "unfriendly" judge. *See Hamm v. Rhone-Poulenc Rorer Pharmaceutical, Inc.*, 176 F.R.D. 566, (Minn. 1997); *Goldstein v. Delgratia Mining Corporation, et al.*, 176 F.R.D. 454 (S.D.N.Y. 1997).

*Id.* at ¶¶ 11-13, 19, 20.

{18}     Accordingly, this Court holds that where a complaint is filed containing class action allegations and claims, those class claims may not be withdrawn, whether by voluntary dismissal, amendment to the complaint or simple failure to pursue class certification without court approval under Rule 23(c).

**III.**

{19}     Turning to the question of whether plaintiffs may withdraw their class action claims in this case and the circumstances under which they should be permitted to do so, the Court finds several reasons to exercise caution and to carefully scrutinize the request.

{20}     First, plaintiff's counsel initially attempted to eliminate the class action claims without notice to the class.  At the February 8, 2002 hearing, Mr. Simpson conceded that some notice should be sent and offered to pay half the expense. However, that concession did not occur until the issue of notice had been raised.  Had DaimlerChrysler not opposed the amendment, plaintiffs' counsel may have

successfully run the end-around on Rule 23(c) without plaintiffs having to give notice and incur the costs involved in that notice. Not only do the plaintiffs owe fiduciary duties to absent class members, when counsel file a complaint containing class allegations, they become fiduciaries to the absent class members as well. *See* Herbert Newberg and Alba Conte, 1 *Newberg on Class Actions* § 5.23 (3d ed. 1992). Those fiduciary duties include informing absent class members when the class claims have been withdrawn so that they know the statute of limitations is no longer tolled and that their interests are no longer being represented by the plaintiffs who originally undertook to do so.

{21} Second, the issues in this case involving the injunction against Mr. Kirkhart prohibiting solicitation of possible clients whose names were obtained through discovery in the *Pleskach* case requires the court to consider whether counsel's position has influenced his advice to the class representatives or their decision not to pursue the class claims. While the injunction has been dissolved, it was pending at the time the notice of withdrawal was filed. The motion for contempt is still pending. Both the class representatives and their attorneys owe fiduciary duties and loyalty to the absent class members, and conflicts of interest on the part of either should be fully disclosed and considered. Although the cloud hanging over Mr. Kirkhart may disappear, at this stage the Court must closely examine the circumstances surrounding withdrawal of the class allegations.

{22} Third, there has been a substantial amount of publicity generated about this case. The generation of publicity, particularly where it may be attributed to plaintiffs or their counsel, causes concern for two reasons. The existence of that publicity substantially increases the likelihood that there are absent class members who may be relying on the class representatives to pursue their claims. Those absent class members need to know that they are no longer being represented and that the statute of limitations will no longer be tolled. The more publicity generated, the greater the need for notice and the more closely notice needs to be tailored to the publicity generated. Otherwise, absent class members may be prejudiced. Also, the generation of publicity is a warning signal to judges that should cause them to be fully attuned to the possibility of the misuse or abuse of the class action mechanism. Class actions, in and of themselves, create leverage and pressure on defendants. The stakes, particularly in damage class actions are multiplied. Where adverse publicity is generated in connection with a consumer product or practice, the leverage on the defendant is further increased and expanded beyond the courtroom to the marketplace. Courts must guard against the most pernicious use of that leverage which is a settlement of the individual claims tied to a dismissal of the class claims. They must also guard against collusion between plaintiffs and defendants. Here, the Millers have already settled with a dealer defendant who was designated as a representative class defendant,

without court approval or knowledge of the terms of the settlement. They had already indicated their desire to withdraw the class claims against that defendant when the case was settled. However, at this stage the Court cannot determine if there has been a misuse of the class action mechanism or collusion. Voluntary dismissal of the Miller's claims against the dealer defendant will require court approval.

{23} In summary, the circumstances of this case dictate that the Court be cautious in its approval of withdrawal of the class claims and diligent in determining the notice required.

{24} Taking that caution into consideration, there are, nonetheless, substantial reasons to permit plaintiffs to withdraw the class allegations and claims. Plaintiffs advanced several explanations for their decision to withdraw as class representatives at the hearing on their motion to amend. First, counsel indicated that DaimlerChrysler's attack on Mr. Kirkhart's activities in contacting the named plaintiffs raised issues which could negatively impact a finder of fact's view of the case and the plaintiffs as class representatives. Putting aside the class representatives' ability to change counsel to solve that problem, if issues of solicitation were interjected in the trial, it conceivably could have a negative impact on the class claims. Additionally, the relationship between the class representatives and class counsel is one of the Court's concerns in determining adequacy of the prospective class representatives. *See Tomlin*, 2002 NCBC at ¶ 21. Where solicitation has occurred, the independence of the class representative may become an issue when determining adequacy. *See Pitts v. American Sec. Ins. Co.*, 2000 NCBC 1, ¶ 37, *rev'd in part, vacated in part*, 144 N.C. App.1 (2001), *pet. for discretionary review granted*, No. 369PA01, 2002 N.C. LEXIS 28 (February 1, 2002). The Court makes no determination with respect to whether a permissible or impermissible solicitation occurred here, it simply notes the possibility of a future problem arising at trial. Second, counsel for the individual plaintiffs indicated, without elaboration, that he felt that there were certain issues with respect to the adequacy of the plaintiffs as class representatives, alluding to dissimilarities in their claims. The Court has also examined those dissimilarities and finds the possibility of significant problems with adequacy given the nature and breadth of the purported class. The Court will not dwell on those problems here. It is sufficient for this motion to find that plaintiffs faced potentially fatal problems with the proposed class, both from a plaintiffs' and defendants' standpoint. Most states have lemon laws, and they vary significantly, both as to structure and the remedies provided. Maintenance of a nationwide class action on behalf of plaintiffs against a nationwide class of defendant automobile dealers would have posed almost impossible management problems, resulting in a finding that this class action was not the superior method of resolution of the nationwide claims asserted. Not only did

plaintiffs have differing claims against the defendant dealers, they also had no claims under any other state laws, creating the possibility of conflicts of interest with class members in states with different statutes. Whether this Court would have jurisdiction to enter injunctive relief against dealers in other states posed a significant hurdle for plaintiffs' class claims. Other problems existed with the class as structured and represented. Some plaintiffs' claims may be subject to summary judgment. The Millers have settled with the defendant dealer that leased them their truck. The ongoing problems of class counsel are a concern. As this Court pointed out in *Tomlin*, the relationship between class counsel and the class representatives is significant. 2002 NCBC at ¶ 21. The burden on a small number of plaintiffs in North Carolina to support a nationwide class action is substantial. The reluctance of the plaintiffs to act as class representatives is also a consideration. In summary, the class action allegations raised substantial problems for a variety of reasons, all of which support approval of withdrawal of those claims.

{25}    Courts also have to guard against forum shopping in these circumstances. Plaintiffs' counsel indicated in open court that there were no plans to reinstitute this suit elsewhere.

{26}    Finding that withdrawal of the class claims is justified under the circumstances, the Court has the duty to see that absent class members are protected. Notice must reach those potential absent class members who may be relying upon plaintiffs and their counsel to represent their interest, and all absent class members need to know that the statute of limitations on any claim will no longer be tolled when the court finally approves withdrawal of the claims. The Court is assuming that the statute of limitations was tolled with the filing of the complaint and that it will no longer be tolled when the Court permits amendment of the complaint. That assumption is based upon the holding of the North Carolina Court of Appeals in *Scarvey v. First Fed. Sav. & Loan Ass'n.*, 2001 N.C. App. LEXIS 790, 552 S.E.2d 655, 661 (2001). That case did not deal with withdrawal of class claims, only denial of class certification.

{27}    In order to determine what notice will protect the absent class members under the circumstances of this case, the Court needs additional information to determine the extent of publicity which may have reached potential absent class members. Accordingly, the Court will require that *all* parties and their counsel file with the Court an affidavit which provides the following information:[1]

    1.    A description of any contact the parties or their counsel had with any news media concerning the class action claims in this case. The affidavit shall disclose who initiated the contact.

    2.    A description of any appearance the parties or their counsel made in the broadcast

media including the times and areas of broadcast of any appearance and a copy of any tape or transcript of the appearance. The affidavit shall disclose who initiated the contact.

3. Each affiant shall attach to their affidavit a copy of any press release, letter, email, or other written communication to a news organization intended or designed to generate or which had the effect of generating publicity about a party's position in this lawsuit.

4. A description of any contact with any consumer groups, trade associations, or other trial attorneys intended or designed to communicate to the membership of those groups the existence of the class claims. A copy of any written communication shall be furnished to the Court.

5. A description of any information about the lawsuit posted on the Internet by a party or counsel, including the date, time and place of posting. If currently available, a written copy of the information shall be furnished to the Court.

6. Counsel shall provide the court with a copy of any printed media accounts, press releases or other written publicity generated by others referring to the litigation, identifying the date, time and publisher of the account.

7. A description of any contact made with any potential or absent class members after the Complaint was filed which contact could have led such potential or absent class member to believe their interests were being represented by plaintiffs in this lawsuit.

{28}   Counsel for plaintiffs and counsel for defendants shall each file with the Court a suggested plan of notification designed to reach those absent class members who may have received publicity about the lawsuit and believed that they were being represented or that the statute of limitations on their claims was tolled. Each plan shall contain a good faith estimate of the cost that would be incurred if the plan were implemented. It should also contain a proposed notice or notices to be disseminated.

{29}   DaimlerChrysler shall file with the Court an affidavit detailing the information available in its records or records which have been produced to plaintiffs' counsel which would permit direct notice to owners of repurchased vehicles and detailed information about the costs associated with obtaining that information.

{30}   The above described information shall be filed with the Court no later than March 19, 2002. DaimlerChrysler shall file the affidavit specified in paragraph 29 above on or before March 11, 2002 so that counsel for plaintiffs will have the opportunity to review it prior to making their submission. Upon review of the submissions, the Court will determine an appropriate notice plan and assessment of the costs associated with the plan. An order will be entered at that time specifically ruling on the motion to amend and the motion to withdraw the motion for class certification.

SO ORDERED, this 19th day of February 2002.

---

[1] The Court is mindful that during the course of this litigation, Mr. Abrams left the partnership of the firm he practiced with at the time this putative class action was filed.  Accordingly, all of the Court's requests for information apply to information obtained by Mr. Abrams while practicing in his former partnership, and the Court places the burden of obtaining any such information held by his former partnership on Mr. Abrams.